Argued and submitted April 21, reversed in part and remanded; otherwise affirmed
September 6, reconsideration allowed; former opinion modified and, as modified,
adhered to; motion to supplement record denied December 28, 1989
See 100 Or App 12 (1990)

# BADGER et al,
*Appellants,*

*v.*

# PAULSON INVESTMENT COMPANY, INC., et al,
*Respondents.*

## (84-11-75; CA A45550)

779 P2d 1046

James C. Tait, Oregon City, argued the cause for appellants. With him on the briefs was Canning, Tait & McKenzie, P.C., Oregon City.

David J. Sweeney, Portland, argued the cause for respondents. With him on the brief were Paul G. Dodds and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs appeal from a judgment for defendant Paulson Investment Company, Inc. (Paulson), notwithstanding the verdict in their favor on their claims for the sale of unregistered securities, ORS 59.115(1)(a), securities fraud, ORS 59.115(1)(b), and common law fraud. They also appeal from a separate judgment against defendant Fidelity and Deposit Company of Maryland (Fidelity), assigning error to the court's failure to award them costs, disbursements and attorney fees.[1]

Paulson is an Oregon corporation engaged in the business of selling securities. It is subject to the provisions of ORS chapter 59. Paulson is bonded by Fidelity pursuant to ORS 59.175. Beginning in February, 1982, defendant Lambo was employed by Paulson as a sales representative. In 1983, he sold unregistered securities in a mining venture to plaintiffs, in violation of Oregon law.[2] ORS 59.115.[3] The securities

---

[1] The several judgments entered in this case disposed of all the claims of all the parties. This appeal involves only defendants Paulson and Fidelity.

[2] The sales were actually made by Lambo, Kennedy and Johnson. Kennedy and Johnson were dismissed from the action. For the sake of simplicity, we refer only to Lambo.

[3] The 1981 version of ORS 59.115, applicable here, provided:

"(1) Any person who:

"(a) Offers or sells a security in violation of the Oregon Securities Law or of any rule or order of the commissioner, or of any condition, limitation or restriction imposed upon a registration under the Oregon Securities Law; or

"(b) Offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable as provided in subsection (2) of this section to the person buying the security from him.

"(2) The purchaser may recover, in addition to costs and reasonable attorney fees at trial and on appeal:

"(a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment at the rate of six percent per annum, or at the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security; or

"(b) If he no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of six percent per annum from the date of disposition.

"(3) Every person who directly or indirectly controls a seller liable under

consisted of a tax shelter scheme that had been developed by Lambo and defendant Duane Babcock in 1981, before Lambo came to work for Paulson. Plaintiffs lost their entire investments and brought this action.

On the first claim, the court held as a matter of law that defendants Lambo and Babcock had sold unregistered securities in violation of ORS 59.115(1)(a) and that plaintiffs were damaged in the amounts of their investments, plus interest. It submitted to the jury the question of whether Paulson was liable to plaintiffs, either directly under ORS 59.115(3) as a controlling person, as a participant or as having materially aided in the sales, or indirectly under ORS 59.115(1) on a theory of "apparent authority." The court instructed the jury that Fidelity's liability on its bond turned on whether Lambo had acted within the course and scope or within the apparent course and scope of his employment with Paulson. ORS 59.115(6).

The court submitted the question of liability on the second claim, securities fraud, to the jury with respect to Lambo, Babcock, Paulson and Fidelity. Paulson's and Fidelity's liability depended on the same theories advanced with respect to the first claim.

The jury returned a verdict for plaintiffs and against Paulson and Fidelity on the first claim and against all defendants on the second claim. The court granted a judgment

---

subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that he did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with him.

"(4) Any tender specified in this section may be made at any time before entry of judgment.

"(5) No action or suit may be commenced under this section more than three years after the sale.

"(6) Any person having a right of action against a broker-dealer, or against a salesman acting within the course and scope or apparent course and scope of his authority, under this section shall have a right of action under the bond provided in ORS 59.175."

All references in this opinion are to that version of the statute.

notwithstanding the verdict in favor of Paulson on both statutory claims. It entered judgment for plaintiffs against Lambo, Babcock and Fidelity in the amount of the investment of each plaintiff. It declined to award plaintiffs costs, disbursements or attorney fees against Fidelity on the ground that Fidelity had tendered on the day of trial an amount greater than plaintiffs' recovery at trial. *See* ORS 743.114.

Plaintiffs' common law fraud claim is against all defendants, except Fidelity. The complaint alleges that the conduct that constitutes statutory securities fraud also constitutes common law fraud. The court submitted the claim to the jury, which returned a verdict for plaintiffs. The jury awarded each plaintiff special damages of $1.00 against Paulson and the full amount of their investment less $1.00 against Lambo and Babcock. It awarded each plaintiff punitive damages of $20,000 against Lambo and Babcock and $2,500 against Paulson. The court accepted the jury's award of special damages against each defendant, but entered a judgment for Paulson on punitive damages, notwithstanding the verdict for plaintiffs.

■  The first assignment concerns the court's refusal to award costs, disbursements or attorney fees to plaintiffs against Fidelity on the two statutory claims. The court based its ruling on ORS 743.114, which provides, in part:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, *and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action,* a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." (Emphasis supplied.)

In open court on the morning of trial, Fidelity unconditionally tendered $30,005 to plaintiffs. Plaintiffs rejected the offer and, after trial, recovered $21,172 from Fidelity. The trial court agreed with Fidelity that, because plaintiffs' recovery did not exceed Fidelity's tender, ORS 743.114 precludes the recovery of costs and attorney fees. Plaintiffs contend that the action on the bond is brought pursuant to ORS 59.115(6) and that they have a right to attorney fees under ORS 59.115(2), independently of the provisions of ORS 743.114.

The substance of ORS 59.115 is that one who sells a security in violation of the Oregon Securities Law is liable to the purchaser, who may recover, "in addition to costs and reasonable attorney fees at trial and on appeal," certain damages. Subsection (6) provides that anyone having a claim against a broker under that section "shall have a right of action under the bond provided in ORS 59.175." Although we believe that that section, read as a whole, means that the purchaser may claim the same amounts against the bond as against the seller, which includes costs and attorney fees, we need not decide whether ORS 59.115 or ORS 743.114 controls, because we conclude that plaintiffs would be entitled to costs and attorney fees under either statute.

The tender required by ORS 743.114 must comply with ORS 20.180. *Dolan v. Continental Casualty Co.,* 133 Or 252, 289 P 1057 (1930).[4] That section provides:

> "When in any action or suit for the recovery of money or damages only, the defendant shall allege in answer that *before the commencement thereof* the defendant tendered to the plaintiff a certain amount of money in full payment or satisfaction of the cause, and now brings the same into court and deposits it with the clerk for the plaintiff, if such allegation of tender is found true, and the plaintiff does not recover a greater sum than the amount so tendered, the plaintiff shall not recover costs off the defendant, but the defendant shall recover them off the plaintiff." (Emphasis supplied.)

Because Fidelity's tender was not made before the commencement of the action, it did not comply with ORS 20.180, and it would not defeat plaintiffs' right to attorney fees under ORS 743.114. Plaintiffs would be entitled to costs and attorney fees either under that statute or under ORS 59.115, and they therefore prevail in either case. Accordingly, the case is remanded

---

[4] In considering the significance of the term "tender" as used in the substantively identical predecessors to ORS 743.114 and ORS 20.180, the Supreme Court stated in *Dolan v. Continental Casualty Co., supra:*

"The meaning of the word 'tender,' when [the predecessor to ORS 743.114] was enacted, was defined by [the predecessor to ORS 20.180]. The general laws of the state having defined the word 'tender,' it will be presumed, on the enactment of a new statute using the word 'tender,' that the word as defined by the statute is intended. There is no conflict between [the predecessor to ORS 743.114] and [the predecessor to ORS 20.180]. The former section does not attempt to define 'tender' and that word as therein used must be taken to be the word 'tender' used in [the predecessor to ORS 20.180]." 133 Or at 254.

for a determination of costs, including reasonable attorney fees.

■ Plaintiffs assign error to the trial court's granting of Paulson's motion for judgment notwithstanding the verdict on the two statutory claims. The grounds for the rulings were (1) that there was no evidence that Paulson had knowledge of the sales and, therefore, it could not be directly liable under ORS 59.115(3), and (2) that there is no statutory basis for indirect liability under ORS 59.115(1) on a theory of "apparent authority." Plaintiffs contend that there is sufficient evidence to create a jury question on whether Paulson is directly liable under ORS 59.115(3) and, additionally, that liability under ORS 59.115(1) can be premised on "apparent authority." Because we conclude that there was sufficient evidence to create a jury question concerning Paulson's liability under ORS 59.115(3) as a person who directly or indirectly controlled the seller, we do not address plaintiffs' arguments related to liability under ORS 59.115(1).

ORS 59.015(2) defines "control" as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." The *power* to control, whether or not the power is exercised, is the crucial factor under the statute.[5] We conclude that there is evidence to support the jury's verdict that, by virtue of the employment relationship between them, Paulson had the power to control Lambo. Accordingly, Paulson may also be liable, unless it sustains its burden of proving the affirmative defense that it had no knowledge or that it could not have known by exercising reasonable care of the facts giving rise to liability. ORS 59.115(3). It has established that it had no actual knowledge of Lambo's conduct. The question is whether there is evidence to support the jury's finding that, by exercising reasonable care, Paulson could have known of the existence of the facts on which liability is based.

---

[5] Because Oregon's Securities Law is patterned generally on the federal law, *see* 15 USC § 78t(a), we would ordinarily agree with Paulson's argument that the federal interpretation of "controlling person" liability should be persuasive. However, the federal law contains no definition for the term "control." In view of Oregon's statutory definition of "control" as meaning the *power* to control, the federal cases holding that actual control or culpable participation is required to impose liability on one who "directly or indirectly controls a seller" are inapposite. *See, e.g., Buhler v. Audio Leasing Corp.*, 807 F2d 833 (9th Cir 1987).

Plaintiffs called two expert witnesses who gave opinions concerning the level of care exercised by Paulson with respect to Lambo. In their opinions, Paulson did not exercise reasonable supervision over Lambo and, if it had, it would have become aware of his conduct. That is evidence to support the jury's finding that, by exercising reasonable care, Paulson could have known of the existence of the facts giving rise to the violations. We conclude that the trial court erred in entering a judgment notwithstanding the verdict for Paulson on the two securities claims.

Plaintiffs assign error to the trial court's acceptance of the jury's award of special damages on the common law fraud claim. The jury awarded to each plaintiff full damages less $1.00 against Lambo and Babcock and $1.00 damages against Paulson. Plaintiffs argue that the verdict was insufficient, because Paulson's and Lambo's liability is joint and several, and damages must therefore be assessed against each in full.

■■ The liability of principal and agent for the conduct of the agent is both joint and several. Seavey, *Agency* 169, § 95 (1964). Damages awarded against each must be the same, except for punitive damages. Seavey, *supra,* at 170. Paulson's and Lambo's liability for Lambo's acts as Paulson's agent is joint and several, and damages assessed against them should be the same. Therefore, the verdict here is insufficient, because it awards damages against Lambo and Paulson in different amounts.

■ An insufficient verdict may be corrected by the jury on the advice of the court. ORCP 59G(4). There is no provision, however, for the *court* to correct a verdict. Having accepted the incorrect verdict and discharged the jury, the court was required to enter judgment accordingly. Consequently, the error must be corrected on remand by a new trial on the question of special damages as to Lambo and Paulson Investment Company, Inc. *See Dias v. Vanek,* 67 Hawaii 114, 679 P2d 133 (1984).

■ The court gave this instruction on the measure of damages in the common law fraud claim:

"[I]f the person charged with fraudulent misrepresentations is not a seller of the product, has no interest in the

transaction, is not a party to the bargain, but, rather, is a disinterested person who received no benefit or advantage from the transaction, such person is not liable for any more than each purchaser's out of pocket loss. That is, the amount of each investor's purchase."

Plaintiffs contend that the court's instruction was improper, because it suggests that the jury could award a lesser amount of damages against Paulson than it could against Lambo if it determined that Paulson met the criteria stated in the instruction. Because of the jury's verdict that Paulson was liable as principal for Lambo's conduct and our conclusions that that liability is joint and several with Lambo's and that damages assessed against each must be the same, the trial court's instruction was error.

■ Plaintiffs requested that the court find as a matter of law that the minimum amount of damages on the common law fraud claim was the amount of each investor's investment, plus interest at the statutory rate, the same amount that the court had held to be damages as a matter of law on the statutory securities claims. The court denied the request, ruling that the amount of damages was a question of fact for the jury. Instead, it gave the instruction discussed above. We agree with the trial court that the amount of damages for common law fraud is generally a fact question for the jury. Here, however, the evidence of plaintiffs' out-of-pocket loss is uncontradicted and undisputed, and that amount, at a minimum, was recoverable, if the jury found that Lambo had acted fraudulently. Accordingly, the trial court should have given the minimum damages instruction. Although the court's error in failing to so instruct the jury was harmless, because the jury awarded more damages than the minimum amount requested, the court should consider our determination if the issue arises on remand.

■ ■ The court allowed Paulson's motion for a judgment notwithstanding the verdict on each plaintiff's award of punitive damages for common law fraud. There is no argument that punitive damages were not properly assessed against Lambo. When, as here, an employer's liability is vicarious, the initial inquiry in determining whether to award punitive damages against the employer is whether the

employe committed the tort within the scope of his employment. *Stroud v. Denny's Restaurant, Inc.,* 271 Or 430, 437, 532 P2d 790 (1975). We have held that the scope of employment includes acts of an agent that are within the apparent authority of the agent, if a third person acted in reliance on the apparent authority. *Seiders v. Hefner,* 89 Or App 55, 747 P2d 1003 (1987), *rev den* 305 Or 576 (1988). There was evidence to support the jury's finding that Lambo acted with the apparent authority of Paulson and its implicit finding on the fraud claim that plaintiffs relied on Lambo's apparent authority as an agent of Paulson in purchasing the securities. The trial court erred in granting a judgment for Paulson notwithstanding the jury's verdict on punitive damages.[6]

At the conclusion of the evidence, Paulson moved for a directed verdict on the statutory securities claims. The court granted the motion but, on plaintiffs' motion, allowed the claims to go to the jury, stating its intention to grant a judgment notwithstanding the verdict should the jury find for plaintiffs. Paulson objected to many of plaintiffs' proposed instructions on the securities claims. The court overruled the objections, and Paulson now asks that we review the correctness of those rulings. They have not filed a cross-appeal.

Although it is true that we may consider arguments in support of the judgment without the necessity of a cross-appeal, *see Artman v. Ray,* 263 Or 529, 537, 501 P2d 63 (1972), Paulson's arguments, if successful, would not result in an affirmance of the judgment; the case would have to be remanded for a new trial. In this circumstance, a cross-appeal is required. Furthermore, Paulson has failed to set forth in its brief or by reference to the record any of the instructions complained of or the instructions that the court allegedly should have given; it has only referred to the page in the transcript where the court ruled generally on its acceptance or rejection of a specifically numbered instruction that is not

---

[6] Paulson's argument that the activities on which the claim for punitive damages is based consisted of protected spoken or written expression and that punitive damages are therefore prohibited under the Oregon Constitution, Article I, section 8, *see, e.g., Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), is without merit. Here, unlike in *Wheeler* and *Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981), plaintiffs' injury arises, not from defendants' abuse of speech, but from fraudulent conduct that was intended to cause plaintiffs to act in the manner that produced their injury.

quoted *verbatim*. That is not sufficient to raise the alleged error.

Judgment notwithstanding verdict reversed; jury verdicts for plaintiffs on the sale of unregistered securities and securities fraud claims reinstated and remanded for entry of judgment on the verdicts; remanded for new trial on question of special damages on common law fraud claim as to Lambo and Paulson Investment Company, Inc. only and for entry of a judgment for costs and attorney fees for plaintiffs against defendant Fidelity and Deposit Company of Maryland; otherwise affirmed.