Argued and submitted October 15, 1997, affirmed on appeal and cross-appeal March 25, petition for review allowed August 11, 1998 (327 Or 484)

Judith GRIJALVA,
*Appellant - Cross-Respondent,*

*v.*

SAFECO INSURANCE COMPANY OF AMERICA,
a Washington corporation,
*Respondent - Cross-Appellant.*

SAFECO INSURANCE COMPANY OF AMERICA,
a Washington corporation,
*Third-Party Plaintiff,*
*Cross-Appellant,*

*v.*

Judith M. GRIJALVA
and Robert Grijalva,
*Third-Party Defendants,*
*Cross-Respondents,*

*and*

Carol S. EDWARDS
and Larry Edwards,
*Third-Party Defendants.*

(95-CV-0296-AB; CA A94209)

956 P2d 995

Bruce J. Brothers argued the cause for appellant - cross-respondent Judith Grijalva. With him on the briefs were Lawrence Gorman and Brothers & Ash.

Brian Gingerich argued the cause for respondent - cross appellant. With him on the brief were Dennis James Hubel and Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett.

No appearance for cross-respondent Robert Grijalva.

Before Riggs, Presiding Judge, and Landau and Haselton, Judges.*

LANDAU, J.

Haselton, J., concurring.

---

\* Haselton, J., *vice* Leeson, J., resigned.

**LANDAU, J.**

In this underinsured motorist (UIM) benefits dispute, plaintiff appeals from an amended judgment granting defendant Safeco's motion for summary judgment and awarding plaintiff $16,521.02 on defendant's claim for declaratory judgment. Plaintiff's first three assignments of error address the offsets the trial court applied to reduce plaintiff's award of UIM benefits. Her fourth assignment of error challenges the trial court's failure to award attorney fees. Defendant's cross-appeal assigns error to the trial court's failure to award it attorney fees under the interpleader statute. ORCP 31 C. On review of a summary judgment, we determine whether there is any genuine issue of material fact and, viewing the evidence in the light most favorable to plaintiff, whether defendant, the moving party, is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Because a purely legal question is presented in this case, we review entitlement to attorney fees as a matter of law. ORS 20.220. We affirm on appeal and cross-appeal.

On February 10, 1993, plaintiff was a passenger in Carol Edwards's car as the two drove to a business meeting. Edwards's car was struck negligently by a car owned by Donald Dawson, and plaintiff was seriously injured. Dawson was insured under a $60,000 single-limit liability insurance policy, and Edwards's insurance with defendant included $100,000 single-limit underinsured motorist (UIM) coverage. As a passenger in Edwards's car, plaintiff is an insured under Edwards's policy with defendant.

Plaintiff and Edwards received $42,000 and $18,000, respectively, from Dawson's liability insurance policy. Both plaintiff and Edwards received workers' compensation benefits from their employer's workers' compensation insurance carrier. In unreimbursed workers' compensation benefits, plaintiff received $14,877.02, and Edwards received $3,846.59.

Both plaintiff and Edwards sought UIM benefits under Edwards's policy. Defendant paid Edwards $4,755.37 on her claim and refused plaintiff's claim for UIM benefits.

Plaintiff filed this breach of contract action, claiming that defendant refused to arbitrate the claim and refused to accept plaintiff's settlement offer of $40,000. Defendant's answer denied liability and counterclaimed for declaratory relief and third-party interpleader pursuant to ORCP 31. Plaintiff amended her complaint to increase the prayer to $58,000. Both parties filed motions for summary judgment. The trial court granted defendant's motion for summary judgment on plaintiff's claim and awarded plaintiff $16,521.02 on defendant's declaratory relief action. The trial court calculated the amount of the award to plaintiff by reducing the $100,000 UIM benefits available under Edwards's policy by the following offsets: (1) $60,000 paid to plaintiff and Edwards by Dawson's liability insurance carrier; (2) $4,755.37 defendant paid to Edwards under her UIM policy; (3) $14,877.02 paid to plaintiff by her employer's workers' compensation carrier as unreimbursed workers' compensation benefits; and (4) $3,846.59 paid to Edwards by her employer's workers' compensation carrier as unreimbursed workers' compensation benefits. Neither party was awarded attorney fees or costs.

On appeal, plaintiff first assigns error to the trial court's determination that Edwards's recovery from Dawson's liability insurance carrier is an offset against the amount that plaintiff is entitled to recover under Edwards's UIM policy. Plaintiff argues that she is entitled to all of Edwards's $100,000 UIM coverage, less $42,000 that she recovered from Dawson and $4,755.37 that Edwards received from defendant under the UIM policy, or a total of $53,244.63. Plaintiff argues that the trial court erred in also deducting from her recovery the amount that Edwards received from Dawson, because the applicable statute, ORS 742.504(7), focuses on the "each person" limit of liability, not the "each accident" limit, and nothing in the statutory scheme requires a different result. Defendant responds that Edwards's recovery from Dawson was properly offset, because such an offset is required by both the statutes and Oregon case law.

■ The minimum required terms of UIM coverage are provided by ORS 742.502(4) and ORS 742.504. Because the intention of the legislature, rather than the parties, controls

the interpretation of those terms, we examine only those statutory provisions. *See To v. State Farm Mutual Ins.*, 319 Or 93, 97, 873 P2d 1072 (1994) (when insurance contract provision is required by statute, the intent of the legislature, rather than the intent of the parties to the contract, controls); *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 244-45, 855 P2d 626 (1993) (when a provision appears in a contract because required by statute, the court must determine meaning intended by the legislature). We first examine the text and context of the statutes to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). If the statutes are unambiguous, our inquiry ends. *Id.* at 611-12.

ORS 742.502(2)(a) provides that uninsured motorist (UM) coverage in excess of the financial responsibility amounts, ORS 806.070, shall include UIM coverage. The statute declares that "[u]nderinsurance benefits shall be equal to uninsured motorist coverage benefits *less the amount recovered from other automobile liability insurance policies.*" ORS 742.502(2)(a) (emphasis supplied). According to ORS 742.502(4), UIM coverage is subject to ORS 742.504, which describes the minimum requirements of UM coverage. ORS 742.504(7) provides:

> "(a)  The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, *the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.*
>
> "(b)  Any payment made under this coverage to or for an insured shall be applied in reduction of any amount which the insured may be entitled to recover from any person who is an insured under the bodily injury liability coverage of this policy.
>
> "(c)  *Any amount payable* under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage *shall be reduced by*:

"(A) *All sums paid* on account of *such bodily injury* by or *on behalf of the owner or operator of the uninsured vehicle* and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator *for such bodily injury including all sums paid under the bodily injury liability coverage of the policy;* and

"(B) The amount paid and the present value of *all amounts payable on account of such bodily injury under any workers' compensation law*, disability benefits law or any similar law."

(Emphasis supplied.)

■ ORS 742.502(2)(a) and ORS 742.504(7)(c)(A) unambiguously require that UIM coverage be reduced by the total amount paid to insureds by a tortfeasor's liability insurance carrier. Plaintiff does not dispute that her recovery from Dawson's liability carrier must be deducted from Edwards's UIM policy limit. For the reasons that follow, we reject plaintiff's contention that the trial court erred in deducting Edwards's recovery from Dawson's liability carrier from plaintiff's recovery under Edwards's UIM policy.

■ An insured is entitled to recover from only one category of UIM benefits following an accident—either the "each person" limit or the "each accident" limit of liability. ORS 742.504(7)(a). The category of UIM benefits to which an insured is entitled depends on the number of insureds making claims against the UIM policy. If only one insured makes a claim for UIM benefits, the category is the "each person" limit. If more than one insured makes a claim for UIM benefits, each claimant's maximum recovery is the "each person" limit, subject also to the "each accident" limit. The "each accident" limit is the upper limit on the total recovery available under the UIM policy. ORS 742.504(7)(a). The amount available from the "each accident" category depends on factors such as the number of claimants, the tortfeasor's liability limit and the amount of each claimant's damages. In cases where the "each person" limit multiplied by the number of claimants equals or exceeds the "each accident" limit of the UIM policy, all claimants are entitled to benefits from the "each accident" category, and all applicable offsets for each claimant are deducted from that category.

In this case, Edwards's UIM policy is a single-limit policy with an "each person" limit of $100,000 and an "each accident" limit of $100,000. *See Mutual of Enumclaw Ins. Co. v. Key*, 131 Or App 130, 132, 883 P2d 875 (1994), *rev den* 320 Or 567 (1995) (interpreting a single-limit policy to include equal "each person" limit and "each accident" limit). There are two claimants to the UIM benefits under that policy—plaintiff and Edwards. Consequently, only one category of UIM benefits is available to plaintiff and Edwards—the $100,000 "each accident" limit. Any offsets applicable to either plaintiff or Edwards reduce the $100,000 of UIM benefits available to both. Plaintiff and Edwards recovered a total of $60,000 from Dawson's liability insurance carrier. The trial court did not err in deducting that amount when determining the amount of UIM benefits available to plaintiff under Edwards's UIM policy.

Plaintiff next assigns error to the trial court's determination that the $3,846.59 that Edwards received from her employer's workers' compensation carrier reduces plaintiff's recovery under Edwards's UIM policy. Plaintiff argues that the applicable statute, ORS 742.504(7), focuses on the "each person" limit of liability as opposed to the "each accident" limit and that nothing in the statutory scheme requires that Edwards's workers' compensation payment be used as an offset against plaintiff's recovery. Defendant responds that ORS 742.504(7) clearly mandates that workers' compensation benefits received by UIM claimants be used to offset benefits available under the UIM policy.

The Oregon legislature enacted ORS 742.504(7) to ensure that no UIM coverage policy can provide less favorable coverage than the statute mandates. *Vega v. Farmers Ins. Co.*, 323 Or 291, 301-02, 918 P2d 95 (1996). Because plaintiff does not contend that Edwards's policy provisions are more favorable than the statutorily required provisions, we examine only the statute. *To*, 319 Or at 97; *Moore*, 317 Or at 244-45. As explained above, ORS 742.504(7) addresses limits of liability and reductions to those limits of liability. ORS 742.504(7)(c) provides, in part:

> "(c) *Any amount payable* under the terms of this coverage because of bodily injury sustained in an accident by a

person who is an insured under this coverage *shall be reduced by*:

"\* \* \* \* \*

"(B) *The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law,* disability benefits law or any similar law."

(Emphasis supplied.)

The statute unambiguously states that the amount of UIM benefits payable to an insured shall be reduced by the insured's workers' compensation payments. *Pitchford v. State Farm Mutual Auto. Ins. Co.,* 147 Or App 9, 14, 934 P2d 616, *rev den* 325 Or 621 (1997) (all amounts payable as workers' compensation benefits are deducted from UIM limits); *California Casualty Indemnity Exchange v. Maritzen,* 123 Or App 166, 170-72, 860 P2d 259, *rev den* 318 Or 97 (1993) (workers' compensation benefits received by insured must be offset against policy limits). As we explained in resolving plaintiff's first assignment of error, if multiple claimants seek recovery under the "each accident" category of UIM benefits, all offsets applicable to any claimant reduce the amount of available UIM benefits. In this case, only the "each accident" category of Edwards's single-limit policy exists to compensate plaintiff and Edwards. The trial court did not err in reducing the "each accident" limit of $100,000 by the amount of Edwards's workers' compensation payment.

Plaintiff next assigns error to the trial court's determination that the $14,877.02 that plaintiff received from her employer's workers' compensation carrier reduces her UIM recovery under Edwards's policy. Plaintiff argues that UIM coverage should be treated differently from UM coverage and that an insured's workers' compensation payments should not reduce UIM benefits. Plaintiff further contends that we should limit our interpretation of the UIM statutory scheme to ORS 742.502(2)(a), which states, in part, that "[u]nderinsurance benefits shall be equal to uninsured motorist coverage benefits *less the amount recovered from other automobile liability insurance policies.*" (Emphasis supplied.) Defendant responds that the offsets available under UM coverage are equally applicable to UIM coverage under ORS

742.502(4) and that our recent decision in *Pitchford* supports its argument that workers' compensation payments received by claimants under an insurance policy are an offset against UIM benefits.

■ For plaintiff to prevail on this assignment of error, we would have to ignore ORS 742.502(4), which states that UIM coverage is subject to ORS 742.504, which in turn describes required provisions of UM coverage and makes those provisions expressly applicable to UIM coverage. *Vega*, 323 Or at 302-03 n 9; *Pitchford*, 147 Or App at 15. Offsets applicable to UM coverage apply with equal force to UIM coverage, and amounts payable as workers' compensation benefits are deducted from UIM policy limits. ORS 742.504-(7)(c)(B); *Pitchford*, 147 Or App at 14; *see also California Casualty Indemnity Exchange*, 123 Or App at 170-72 (offsets for workers' compensation payments should be taken from policy limits rather than from a plaintiff's total damages). The trial court did not err in deducting plaintiff's workers' compensation payment from Edwards's $100,000 UIM policy limit.

■ Plaintiff next assigns error to the trial court's failure to award her attorney fees based on the provisions of ORS 742.061, which provides, in part:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and *the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action*, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

(Emphasis supplied.) Plaintiff filed her claim with defendant on April 10, 1995. The following month, defendant denied that any benefits were owing to plaintiff on that claim. Plaintiff initiated this action in July 1995. Defendant filed an answer on September 25, 1995, including a counterclaim and third-party complaint in interpleader, offering to deposit $15,800 with the court pursuant to ORCP 31, and stating that the $15,800 was the remaining available balance of the UIM coverage available under Edwards's policy. In May

1996, when defendant learned that its obligation to plaintiff would not exceed $16,521.02, it amended its answer and third-party complaint in interpleader, offering to tender that amount pursuant to ORCP 31. On appeal, defendant asserts, and plaintiff does not dispute, that the interpleader complaints contained "tenders" for purposes of ORS 742.061. *See Gore v. Prudential Ins. Co. of Amer.*, 265 Or 12, 16, 507 P2d 20 (1973) (interpreting *former* ORS 743.114 (1973), currently codified at ORS 742.061, concluding that a party is not entitled to recover attorney fees if the insurer has tendered the proceeds of the insurance policy by filing a suit in interpleader and explaining that the statute applies in circumstances in which the insurer contends that it has no liability to the insured under the policy).

Plaintiff first argues that the "tenders" in defendant's interpleader complaints fail to satisfy ORS 742.061 because they occurred after the commencement of litigation. Plaintiff relies on *Badger v. Paulson Investment Co., Inc.*, 98 Or App 200, 779 P2d 1046, *modified* 100 Or App 12, 784 P2d 125 (1989), *aff'd in part, rev'd in part* 311 Or 14, 803 P2d 1178 (1991). In *Badger*, we relied on *Dolan v. Continental Casualty Co.*, 133 Or 252, 289 P 1057 (1930), which interpreted an earlier version of ORS 742.061 to require an insurer to tender a sufficient amount before the commencement of litigation to avoid liability for attorney fees. In *Badger*, we held that because the insurer had not made a sufficient tender before the commencement of litigation, the plaintiff was entitled to recover attorney fees under former ORS 743.114 (1987). *Badger*, 98 Or App at 205.

Defendant points out that the holding in *Badger* that the tender requirement of ORS 743.114 (1987) must comply with ORS 20.180 was overruled implicitly in our decision in *Durflinger v. Statesman Life Ins. Co.*, 100 Or App 581, 787 P2d 892 (1990). In *Durflinger,* the defendant insurer tendered the full amount the plaintiff sought, but did so after litigation had commenced. *Id.* at 583. The issue in that case was whether ORS 743.114 (1987), required the tender to be made before the commencement of litigation. We concluded that "ORS 743.114 [(1987)] does not include a requirement that an offer be made before the commencement of litigation." *Id.* at 586. Although we did not mention *Badger* in *Durflinger,*

we agree with defendant that the two cases cannot be reconciled. We now expressly disavow the holding in *Badger* that a tender must be made before the commencement of litigation to avoid liability for attorney fees under ORS 742.061. However, the holding in *Badger* that we now explicitly disavow was based on *Dolan*, which, as noted, held that an earlier version of ORS 742.061 required an insurer to tender a sufficient amount before litigation was commenced to avoid liability for attorney fees. We conclude that in light of later case law, *Dolan* is no longer controlling. In *Gore*, for example, as in this case, the plaintiff commenced litigation on an insurance policy, and the insurer, facing multiple claims on the policy, interpleaded the proceeds of the policy. *Gore*, 265 Or at 14. The insurer made no tender before the commencement of litigation. Nevertheless, the court concluded that the plaintiff was not entitled to recover attorney fees under ORS 743.114 (1973),[1] because the statute was intended to provide attorney fees in situations where "the insurer is contending it has no liability under the policy" and did not provide for attorney fees where the insurer was "willing to pay policy proceeds to whomever they might belong." *Gore*, 265 Or at 16. In light of *Gore*, we must conclude that, notwithstanding *Dolan*, ORS 742.061 does not require that tenders be made before the commencement of litigation.

■    Plaintiff contends alternatively that she is entitled to recover attorney fees under the analysis set forth in *Durflinger*. After concluding that the statute did not require that a tender be made before the commencement of litigation, we stated in *Durflinger*:

> "[ORS 743.114 (1987)] provides that settlement must be made within six months from the date a proof of loss is filed with an insurer. Here, no proof of loss was ever filed. However, as discussed above, in view of defendant's denial of liability, it was not necessary that one be filed. Under these circumstances, the filing of a complaint is the equivalent of filing a proof of loss, because it gave the insurer 'full knowledge of plaintiff's intention to hold it liable for performance of the contract.' *State Highway Com. v. DeLong Corp.*, 9 Or App 550, 585, 495 P2d 1215, [*cert*] *den* 411 US 965 (1972),

---

[1] ORS 743.114 (1973), at issue in *Gore*, is worded identically to ORS 742.061, the statute at issue in this case.

> [*cert*] *den* 412 US 944 (1973); *State v. Claypool*, 145 Or 615,
> 28 P2d 882 (1934). Here, plaintiff's amended complaint that
> included the claim on the disability policy was filed in
> August, 1988. *Defendant made a timely tender under ORS
> 743.114.*"

*Durflinger*, 100 Or App at 586 (emphasis supplied). Plaintiff
contends that the above "timely tender" language from
*Durflinger* means that a sufficient tender must be made
within six months of the date that a proof of loss is filed. We
agree that the above-quoted language from *Durflinger*
implies that the insurer's tender in that case was sufficient
because it was made within six months of "the equivalent of
filing a proof of loss." *Id.* The question we must contend with
now, however, is whether that construction of the statute is
correct.

In construing a statute, our goal is to discern the
intent of the legislature. *PGE*, 317 Or at 610. The best evi-
dence of the legislature's intent is the text and context of the
statute. *Id.* ORS 742.061 contains three separate require-
ments, stated in the conjunctive. That is, all three require-
ments must be met for a party to recover attorney fees from
an insurer. First, settlement is not made within six months
from the date proof of loss is filed; second, an action is
brought on the insurance policy; and third, "the plaintiff's
recovery exceeds the amount of *any tender* made by the
defendant in such action." (Emphasis supplied.) As a matter
of syntax, the six-month time limitation applies to the first
requirement; it does not apply to the third requirement.
Moreover, the language of the third requirement supports
what the syntax indicates: The third requirement applies to
"*any* tender" made by the insurer in an action. It is impossi-
ble to reconcile the legislature's use of the word "any" with a
conclusion that only tenders made within six months of filing
of proof of loss would qualify. Accordingly, we conclude that
defendant's tender made in May 1996 satisfied the third
requirement of ORS 742.061. We disavow any language in
*Durflinger* that may be construed to be inconsistent with that
conclusion. The trial court correctly concluded that plaintiff
was not entitled to attorney fees under ORS 742.061.

■    We turn to defendant's cross-appeal. Defendant contends that the trial court erred in failing to award it attorney fees. Defendant relies on ORCP 31 C:

> "In any suit or action in interpleader filed pursuant to this rule by any party other than a party who has been compensated for acting as a surety with respect to the funds or property interpled, the party filing the suit or action in interpleader shall be awarded a reasonable attorney fee in addition to costs and disbursements upon the court ordering that the funds or property interpled be deposited with the court, secured or otherwise preserved and that the party filing the suit or action in interpleader be discharged from liability as to the funds or property. The attorney fees awarded shall be assessed against and paid from the funds or property ordered interpled by the court."

Those attorney fee provisions apply only "upon *the court ordering* that the funds or property interpled be deposited with the court, secured or otherwise preserved." (Emphasis supplied.) Defendant argues that, although the court made no order, the rule is satisfied because defendant itself "preserved" the funds. That argument is without merit. A prerequisite of recovery of attorney fees under ORCP 31 C is a court *order*, whether it is an order that the funds be deposited with the court or an order that the funds be secured or otherwise preserved. Defendant does not assign error to the trial court's failure to enter such an order. Given the absence of a court order concerning the interpleader funds, the trial court correctly determined that defendant was not entitled to recover attorney fees under ORCP 31 C.

Affirmed on appeal and cross-appeal.

**HASELTON, J.,** concurring.

This is a primal scream concurrence: Under *PGE v. Bureau of Labor and Industries,* our construction of ORS 742.061 is "correct"—and, indeed, inevitable. But in the real world—the world in which insureds and insurers live—that construction defies common sense and sanctions unconscionable results. In the real world, we are wrong.

The upshot of our analysis, 153 Or App at 154-56, is that unscrupulous insurers can bleed their insureds dry by

engaging in litigation wars of attrition—and then, by tendering eleventh-hour settlements to those few who are so tenacious or foolhardy to sustain the fight, avoid any liability for attorney fees under ORS 742.061. Indeed, so long as an insurer offers a sufficient tender anytime before the jury actually returns its verdict, it can avoid any obligation to pay fees. The potential for abuse is manifest.

That result guts the statute:

> "The purpose of [the statute] was to discourage expensive and lengthy litigation. Oftentimes insurance companies have contested their obligation to pay a loss with such persistence and vigor that the benefit of an insurance policy is either largely diminished or entirely lost. It is not the intention of the writer to question the good faith of insurance companies. They have all the rights other citizens have to defend when haled into court. That the contest of insurance losses on doubtful and technical defenses has often caused distress and unnecessary loss to the insurance beneficiaries cannot be denied. For that reason and in the same spirit that a contract for the payment of attorneys' fees in a promissory note is upheld when the maker refuses to pay, insurance companies are required to pay reasonable attorneys' fees, where they have wrongfully defended an action to recover or refused to pay the loss within a reasonable time." *Dolan v. Continental Casualty Co.*, 133 Or 252, 255, 289 P 1057 (1930).

The Supreme Court has consistently reiterated that purpose. *See, e.g., Chalmers v. Oregon Auto Ins. Co.*, 263 Or 449, 452, 502 P2d 378 (1972) ("The purpose of [former] ORS 743.114 allowing recovery of attorney fees by claimants under insurance policies is to encourage the settlement of such claims without litigation and to reimburse successful plaintiffs reasonably for moneys expended for attorney fees in suits to enforce insurance contracts.").

For all of that, the statute says what it says—and the lead opinion's textual analysis is unassailable. The remedy, if any, lies not in judicial ingenuity, but in legislative amendment. *See generally Schwegert v. Beneficial Life Ins. Co.*, 204 Or 294, 305-06, 282 P2d 621 (1955).