Argued and submitted April 3, affirmed on appeal and on cross-appeal July 22, reconsideration denied September 30, petition for review denied November 24, 1992 (314 Or 727)

## AMERICAN ECONOMY INSURANCE COMPANY,
*Appellant - Cross-Respondent,*

*v.*

## Olen A. CANAMORE;
Donald Custer Conn;
and Lisa Tiedtke-Landis,
Personal Representative of the
Estate of Stephen Landis,
*Respondents - Cross-Appellants.*

(90 1 278; CA A68372)

834 P2d 542

Jay D. Enloe, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Lachenmeier & Enloe, Portland.

Robert K. Udziela, Portland, argued the cause for respondent - cross-appellant Olen A. Canamore. With him on the briefs was Pozzi, Wilson, Atchinson, O'Leary & Conboy, Portland.

Donald B. Bowerman, Oregon City, argued the cause for respondent - cross-appellant Donald Custer Conn. With him on the briefs was A. Gregory McKenzie, Oregon City.

Robert K. Udziela, Portland, argued the cause for respondent - cross-appellant Lisa Tiedtke-Landis. With him on the briefs were Pozzi, Wilson, Atchinson, O'Leary & Conboy and Charles P. A. Paulson, Portland.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

EDMONDS, J.

Warren, P. J., dissenting.

**EDMONDS, J.**

This is a declaratory judgment action. Plaintiff appeals and defendants cross-appeal a judgment regarding defendants' entitlement to benefits under two insurance policies. We affirm on appeal and on cross-appeal.

Plaintiff issued two insurance policies to defendant Canamore. One was an automobile liability policy that provided a $500,000 liability limit and $50,000 in uninsured/underinsured (UM/UIM) benefits. The other was a multi-risk, extra-liability, umbrella policy with a $1 million liability limit; it did not offer any UM/UIM benefits.

In May, 1988, Canamore was driving a car in which defendant Conn and decedent Stephen Landis were passengers. The car was involved in an accident with an insured of Safeco Insurance Company (Safeco), who had a policy with a $500,000 bodily injury liability limit. Defendants received $500,000 from Safeco in settlement of their claims against Safeco's insured. They then made claims for UIM benefits under both of Canamore's policies with plaintiff. Plaintiff denied the claims on the grounds that the $500,000 settlement precluded any benefits under the automobile policy and that UIM benefits were not available under the umbrella policy. Plaintiff initiated this action to determine whether defendants are entitled to UIM benefits under either policy. The parties made cross-motions for summary judgment. The trial court granted defendants' motion with regard to the umbrella policy and granted plaintiff's motion with regard to the automobile policy. The judgment says, in part:

> "1.   Plaintiff has no obligation for underinsured motorist benefits for this loss under [the automobile policy] issued to defendant Canamore, for the reason that said policy, when viewed in conjunction with the liability payments made by Safeco Insurance Company, would not provide coverage for underinsured motorist benefits, even if plaintiff's policy limit were to be reformed to $500,000.

> "2.   Defendants are entitled to make claims for underinsured motorist benefits under [the umbrella policy], for the reason that such policy is a 'motor vehicle liability policy,' as that term is used in ORS 742.502,[1] and that such benefits

---

[1] At the time of the accident, ORS 742.502 was numbered ORS 743.789; it was renumbered in 1989. For convenience, we refer to the statute as ORS 742.502.

are imposed by law, even though they are not provided for within the policy itself."

On appeal, plaintiff asserts that the trial court erred in ruling that the umbrella policy is a "motor vehicle liability policy" for the purposes of ORS 742.502. Defendants argue that ORS 742.502 is applicable and assert that, because plaintiff did not offer Canamore any UIM benefits as part of the umbrella policy, the court properly reformed the policy to include UIM benefits.

█ We begin by examining the language of the statute. It is not appropriate to consider extrinsic evidence of legislative intent when the language of the statute has a plain, natural and ordinary meaning. *See Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). ORS 742.502(1) provides, in part:

> "*Every motor vehicle liability policy* insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance, or the use of a motor vehicle, shall provide uninsured[2] motorist coverage therein * * *." (Emphasis supplied.)

By its terms, the statute applies to policies that insure "against loss for liability * * * arising out of the ownership, maintenance, or the use of a motor vehicle." The umbrella policy provides, in part:

> "[Plaintiff] agrees to indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** which the **insured** shall become legally obligated to pay because of **personal liability**." (Boldface in original.)

"Insured," which includes "named insured," is defined as

> "any person while using an **automobile** * * * owned by, loaned to or hired for use in behalf of the **named insured** and any person or organization legally responsible for the use thereof if the actual use is by the **named insured** or with permission of the **named insured**, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *." (Boldface in original.)

---

2 UM coverage includes UIM coverage. ORS 742.502(2), (3).

■ Because the statute, by its terms, applies to "every motor vehicle policy," and because the umbrella policy is a liability policy insuring against loss resulting from the use of an automobile, the policy is subject to the provisions of ORS 742.502. Therefore, plaintiff's failure to offer UIM coverage means that the policy must be reformed to provide UIM benefits in the amount of the policy's bodily injury limits. *See* ORS 742.502(2); *White v. Safeco Ins. Co. of America*, 68 Or App 11, 680 P2d 700, *rev den* 297 Or 492 (1984). The trial court did not err in holding that defendants are entitled to make claims for UIM benefits under the umbrella policy.

■ On cross-appeal, defendants assert that the trial court erred in ruling that, in the light of Safeco's $500,000 settlement with them, plaintiff has no obligation to pay any underinsured motorist benefits to them under the automobile policy with Canamore. They argue that, when that policy is reformed to offer UIM coverage, ORS 742.502(2) requires that UIM benefits be determined by deducting the $500,000 payment by Safeco from their total damages, which they contend exceed that amount. Under the trial court's ruling, defendants are not entitled to any benefits under the policy, because the payment from Safeco is equal to the amount of underinsured benefits that would be available under the reformed policy. ORS 742.502(2) provides, in part:

> "Underinsurance benefits shall be equal to uninsured motorist coverage benefits *less the amount recovered from other automobile liability insurance policies.*" (Emphasis supplied.)

Because defendants' argument is contrary to the plain language of the statute, we reject it.

■ Alternatively, defendants argue that the auto policy provides that the proper offset be between their total legal damages and the amount of Safeco's settlement. The Limit of Insurance provision of the policy says:

> "Any amount payable under this [UM/UIM] coverage shall be reduced by:
>
> "* * * * *
>
> "b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Policy Form's LIABILITY COVERAGE."

Additionally, the policy defines an "underinsured motor vehicle" as

> "a motor vehicle or trailer for which the sum of all liability bonds or policies at the time of the 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged *but that sum is less than the Limit of Insurance of this coverage.*" (Emphasis supplied.)

Reading those provisions together, it is apparent that the policy's UIM benefits are to be reduced by any amounts "paid by or for anyone who is legally responsible." The trial court did not err when it held that defendants are not entitled to UIM benefits under the automobile policy.

Affirmed on appeal and on cross-appeal.

**WARREN, P. J.,** dissenting.

The majority concludes that multi-risk, excess liability insurance (umbrella) policies are subject to the requirements of the compulsory uninsured motorist statutes. ORS 742.500 to ORS 742.506. Because the majority erroneously employs the rules of statutory construction to reach a result that the legislature did not intend, I dissent.

The majority states that it "is not appropriate to consider extrinsic evidence of legislative intent when the language of the statute has a plain, natural and ordinary meaning." 114 Or App at 351. I agree with that statement, as far as it goes. However, it does not go far enough, because the majority ignores the distinction between clear language and clear intent apparent from that language.

Our role in construing a statute is to ascertain the intent of the legislature. ORS 174.020. We begin with the words of the statute. ORS 174.010; *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981). However, when those words do not provide sufficient insight into the legislature's intent, they are ambiguous, and we must look beyond those words to discern that intent. *Mattiza v. Foster,* 311 Or 1, 4, 803 P2d 723 (1991). No matter how apparent the literal meaning of a statute may be, if we cannot tell whether the legislature intended a statute to apply in a particular context, it is appropriate to resort to extrinsic aids to construction.

Umbrella policies provide excess insurance against loss resulting from liability imposed by law for bodily injury or death arising out of numerous specified risks, including the ownership, maintenance or use of a motor vehicle. ORS 742.502(1) provides:

"Every motor vehicle liability policy insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death arising out of the ownership, maintenance, or the use of a motor vehicle, shall provide uninsured motorist coverage therein."

Certainly, an umbrella policy *could* be included within that provision. Nevertheless, had the legislature unambiguously intended to include umbrella policies within that statute, it would have specified that its terms apply to excess insurance policies covering more risks than those specified. Conversely, had the legislature unambiguously intended to exclude umbrella policies from that statute, it would have specified that its terms do not apply to multi-risk excess insurance policies. Because the terms of ORS 742.502(1) neither clearly include nor exclude umbrella policies, the language of that statute does not reflect the intent of the legislature on that issue. *See State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). Accordingly, we must resort to extrinsic aids to construction.

A review of the legislative history of the UM statutes discloses that the legislature did not consider the issue of whether umbrella policies should be subject to the compulsory UM statutes.

"In such an instance we try to determine what the legislature would have done if they had considered the problem. In making this determination, the court's view of the most desirable policy necessarily will be a consideration." *State v. Tippie*, 269 Or 661, 665, 525 P2d 1315 (1974); *accord Liberty Northwest Ins. Corp. v. Short*, 102 Or App 495, 499, 795 P2d 118 (1990).

Policy considerations militate against the construction advocated by defendant. One commentator notes:

"Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium.

"* * * * *

"However, because of the misunderstanding of the courts as to the nature of such coverages, they have been held to fall within the definition of automobile liability insurance. * * * It should be recognized that the generosity of the courts confers no favor upon the insuring public. Such decisions result either in such coverage being withdrawn from potential insureds or in premium rates being raised so substantially that they will become priced out of the range of most buyers. For every such extension there is a price to be paid." 8C Appleman, *Insurance Law and Practice* § 5071.65 (1981). (Footnote omitted.)

Because I do not believe that, had the legislature actually considered the issue, it would have made umbrella policies subject to ORS 742.502(1), I dissent.