Argued and submitted January 25, resubmitted In Banc July 14, affirmed
September 15, reconsideration denied November 10, petition for review denied
November 30, 1993 (318 Or 97)

# CALIFORNIA CASUALTY INDEMNITY EXCHANGE,
a California corporation,
*Respondent,*

*v.*

# Patricia J. MARITZEN
and Mark Mann,
*Appellants.*

(91-02-00923; CA A71056)

860 P2d 259

Dean M. Richards, Portland, argued the cause and filed the briefs for appellants.

Donald E. Templeton, Portland, argued the cause for respondent. With him on the brief were G. Kenneth Shiroishi and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Robert K. Udziela, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, and Henry J. Kaplan and Bennett & Hartman, Portland, filed a brief *amicus curiae* for Oregon Trial Lawyers' Association.

EDMONDS, J.

Rossman, J., dissenting.

Riggs, J., dissenting.

**EDMONDS, J.**

Defendants appeal from a judgment arising out of a controversy submitted under ORCP 66 which held that plaintiff is not required to pay them uninsured motorists (UM) benefits for damages sustained in a motor vehicle accident in addition to that which has been paid. ORS 29.010 *et seq*. We review for errors of law and affirm.

The parties entered into the following stipulation of facts: Defendants Mann and Maritzen were injured in an automobile accident in 1987. At the time of the accident, Mann was driving an automobile owned by Maritzen and in which he was a passenger when it was involved in a collision with another vehicle. The resulting injuries to Mann and Maritzen were caused by the negligence of an uninsured motorist operating the other vehicle. Maritzen is an insured under the policy issued by USAA Casualty Insurance Company (USAA) and Mann is an insured under the policy issued by plaintiff. As a result of the collision, Maritzen received workers' compensation benefits in excess of $60,000 and received an additional $25,000 under the terms of the uninsured motorist coverage from USAA. The parties agree that the amount of damages which Maritzen would have been entitled to recover as a result of the accident is at least $25,000 more than the total of all the benefits received by Maritzen from USAA and the workers' compensation insurer.

Mann received workers' compensation benefits as a result of the collision in the amount of $12,710, $25,000 from USAA under the UM coverage of that policy and $12,290 from plaintiff. The parties agree that the amount that Mann would have been entitled to recover directly from the uninsured motorist is at least $25,000 more than the total of all the UM benefits and workers' compensation benefits that Mann has received. It is undisputed that the amounts paid by USAA to the defendants reduce the available limits of UM coverage under plaintiff's policy to $25,000 per person.

The issue is whether the $50,000 per person UM limits in plaintiff's policy should be further reduced by the amounts received from the workers' compensation insurer so that plaintiff owes no additional sums to either defendant.

Defendants argue that the offsets for the amounts paid by the workers' compensation insurer are to be deducted from their total damages, rather than the limits of liability in plaintiff's policy. If defendants are correct, plaintiff is liable to Maritzen in the amount of $25,000 and to Mann in the amount of $12,710.

The policy's UM coverage provision says that plaintiff's obligation is

"[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, herein after called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle * * *."

The policy also provides:

"LIMITS OF LIABILITY:

"(a)  The limit of liability stated in the Declarations as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the Declarations as applicable to 'each accident' is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

"(b)  Any *loss payable* under the terms of this coverage to or for any person shall be reduced by:

"(1)  the amount paid and the present value of all amounts payable to him under any workers' compensation law, exclusive of non-occupational disability benefits;

"(2)  the amount the insured is entitled to recover from any other person insured under the Bodily Injury Liability coverage of this policy; and

"(3)  all sums paid by or on behalf of the owner or operator of the uninsured motor vehicle and any other person or organization jointly or severally liable together with such owner or operator for bodily injury to an insured." (Emphasis supplied.)

Defendants argue that "loss payable" in section (b) means the total loss or damage suffered by them in the accident. Plaintiff argues that "loss payable" means the amount that is payable up to the policy limits under the terms of the policy. The meaning of the term "loss payable" is a question of law. The intention of the parties controls based on what the terms and conditions of the policy say. *Totten v. New York Life Ins. Co.*, 298 Or 765, 696 P2d 1082 (1985). Both parties offer "plain meaning" interpretations and both proposed meanings are plausible.

We turn to the remainder of the policy to determine which interpretation is correct in the light of the particular context in which the term is used in the policy, and the broader context of the policy as a whole. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). Subsection (a) of the "limits of liability" clause provides that the limit of liability stated in the declarations as applicable to each person is the "limit of the Company's liability for all damages." That clause establishes limits of liability for all covered losses. Subsection (a) is followed by subsection (b) which provides for reduction of the "loss payable" for covered damage under the policy. The fact that the two clauses are part of the "limits of liability" provision of the policy suggests that the two provisions should be read together.

We considered a similar issue in *American Economy Ins. Co. v. Canamore*, 114 Or App 348, 352, 834 P2d 542, *rev den* 314 Or 727 (1992). In that case, the defendants argued that the proper offset of the amount paid by another insurer should be against their total damages. The "limit of insurance" provision in that policy said "any amount payable under this [UM/UIM] coverage shall be reduced by" sums paid by "anyone who is legally responsible." We noted that the policy language expressed the intent of ORS 742.502(2) which says "[u]nderinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability policies." We held that when the policy was read in context, "amount payable" meant that the policy's UIM limits were reduced by any amounts paid by other responsible parties.

ORS 742.504(7)(c) is a statute that is similar in purpose to ORS 742.502(2). The statute provides:

> "*Any amount payable* under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage *shall be reduced by*:
>
> "* * * * *
>
> "(B) *The amount paid* and the present value of all amounts payable *on account of such bodily injury under any workers' compensation* law, disability benefits law or any similar law." (Emphasis supplied.)

In context, the language of subsection (b) of the policy appears to be intended to carry out the intent of ORS 742.504(7)(c).

The dissent would hold, in effect, that the use of the phrase "loss payable" in subsection (b) of the policy means "total damages" and something different from what the statute means. Under the dissent's interpretation, the policy would read:

> "LIMITS OF LIABILITY:
>
> "* * * * *
>
> "(b) The *total damages* under the terms of this coverage to or for any person shall be reduced by:
>
> "(1) * * * amounts payable to him under any workers' compensation law."

In the light of the language of ORS 742.504(7)(c), there would be no reason for an insurer to include such a provision as that proposed by the dissent in its policy because such a provision would be inconsistent with the purpose of the statute. The purpose of the statute is to provide for a reduction of the limits of liability. The dissent's interpretation would not accomplish that purpose when the total damages minus the amount of workers' compensation benefits exceeded the limits of liability. We conclude that, in the light of the internal context of the policy language, the context of the remainder of the policy and the statute, "loss payable" cannot be interpreted to mean "total damages." The phrase "loss payable" can only mean the amount of loss or damage that the insurer is obligated to pay for a covered "loss" under the terms of the policy.

■       Second, defendants argue that to allow policy limits to be offset by workers' compensation benefits defeats the public policy of the uninsured motorist statutory scheme which is to place the injured party in the same position as if the tortfeasor had liability insurance. That policy argument is untenable in the light of the express terms of ORS 742.504(7)(c) that provide for an offset for amounts paid by a workers' compensation insurer. The trial court did not err when it held that the policy requires that the amounts received by defendants be offset against the policy limits.

Affirmed.

**ROSSMAN, P. J.,** dissenting.

As the majority so correctly observes, the outcome of this case is dependent on the meaning of the policy, construed in its entirety. The majority then reaches a predetermined result by construing provisions of the policy without regard to their context. Plaintiff's UM coverage provision states plaintiff's obligation

"[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, herein after called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle * * * ."

The limit of liability stated in the Declarations section of the policy is $25,000 per person and $50,000 per accident. Read together with the limit of liability declarations, the policy's UM coverage thus requires payment for all bodily injury, sickness, disease or death, up to the policy monetary limit of $50,000.

The UM portion of the policy also contains these limitations:

"(a)   The limit of liability stated in the Declaration as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability as stated in the

Declarations as applicable to 'each accident' is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

"(b) *Any loss payable under the terms of this coverage* to or for any person shall be reduced by:

"(1) the amount paid and the present value of all amounts payable to him under any workers' compensation law, exclusive of non-occupational disability benefits." (Emphasis supplied.)

The majority notes sagely:

"Subsection (a) is followed by subsection (b) which provides for reduction of the 'loss payable' for covered damage under the policy. The fact that the two clauses are part of the 'limits of liability' provision of the policy suggests that the two provisions should be read together." 123 Or App at 170.

Perhaps if the majority had understood the quoted provisions, it would have realized that, despite the fact that subparagraphs (a) and (b) are together in the same "limits of liability" section, they deal with separate policy limit issues entirely. Because it did not, it erroneously concludes that subparagraph (b) is somehow subject to paragraph (a), and that, when "read together," the limitations of both subparagraphs must be read to describe monetary limits stated in the policy declarations. Reading the provisions, either together or separately, it readily is apparent to me that they discuss different types of "limits" altogether. The first subparagraph, which refers to "the limit of liability stated in the Declarations," is clearly a reference to the monetary policy limits of $25,000 and $50,000, and explains how those limits operate in the context of an accident involving two or more persons. The second subparagraph, which is the disputed provision, deals with an entirely different subject matter. It does not describe policy monetary limits, which the preceding paragraph clearly identified as the "limits of liability stated in the Declarations." Rather, it talks about "any loss payable under the terms of this coverage." "This coverage" is UM coverage. "Loss payable" refers to all those losses described in the first paragraph quoted in this opinion as being within UM coverage. If the parties had intended that the offset apply to the monetary limits set forth in the declarations, they

should have stated so, by using language similar to that used in subparagraph (a).

It is apparent to me that "loss payable under the terms of this coverage" refers to a loss covered by the terms of the policy, rather than to a dollar limit stated in the policy declarations. Because defendants' covered losses are far in excess of any workers' compensation benefits that they have obtained, as well as in excess of UM policy limits, they are entitled to full UM policy limits.

The rationale of the majority would appear to be that, despite the clear language of the policy, plaintiff could not possibly have intended to provide greater coverage than that required by statute, ORS 742.504(7)(c). Whether the policy provides greater coverage than the statute is not our concern, when, as here, the policy language is clear and permits only one interpretation.

The majority is wrong for another reason. Its interpretation of both the policy and the statute is contrary to the compelling public policy that, in the absence of clear legislative direction, there should be no setting off of recoveries against UM limits if there would be no double recovery. *See Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 187, 550 P2d 422 (1976); *Amer. Motorist Ins. v. Thompson*, 253 Or 76, 79, 453 P2d 164 (1969); *Peterson v. State Farm Ins. Co.*, 238 Or 106, 111-15, 393 P2d 651 (1964).

The insured pays premiums for UM benefits up to a certain amount, if adequate compensation is not available from another source. If the driver at fault is adequately insured, then the limits of the UM coverage are irrelevant. If, as here, the driver at fault is not insured, then an offset for compensation from another source is a windfall to the insurer, who has received premiums in exchange for the promise to compensate the insured. As between the insurer and the insured, public policy dictates that the insured recover under the terms of the UM coverage without any deduction for workers' compensation benefits, so long as there is no double recovery.

Workers' compensation benefits do not compensate for noneconomic loss. An insured who has paid premiums to insure against noneconomic damages should be entitled to

receive what he has paid for. Under plaintiffs' and the majority's interpretation, when workers' compensation benefits exceed UM policy limits, the injured party is entitled to nothing for noneconomic damages.

The majority has put the saddle on the wrong horse. Its result permits a windfall to the insurance industry simply because defendants have received a small bit of compensation for the tragic consequences of their severe injuries. The basic purpose of uninsured motorist coverage is to provide protection for the policy holder against the risk of inadequate compensation for injuries or death caused by the negligence of a financially irresponsible motorist. The legislative purpose in making such coverage compulsory was to place the injured policy-holder in the same position as if the tortfeasor had been insured. *Peterson v. State Farm Ins. Co., supra,* 238 Or at 111-12. The majority's interpretation of the insurance policy and ORS 742.504(7) fails to honor that public policy.

For all these reasons, I dissent.

De Muniz and Leeson, JJ., join in this dissent.

**RIGGS, J.,** dissenting.

I agree with Judge Rossman's dissent, except that I disassociate myself from the public policy basis for his proposed result.