Argued and submitted May 3, decision of the Court of Appeals reversed; judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings December 2, 2004

## David BERGMANN,
## Personal Representative of the Estate of
## Terrel Ann Bergmann,
### *Petitioner on Review,*

*v.*

## Jennifer HUTTON,
### *Defendant,*

### *and*

## FARMERS INSURANCE COMPANY OF OREGON,
### *Respondent on Review.*

## (CC 00-3304-L-2; CA A115380; SC S50395)

101 P3d 353

Kathryn Hall Clarke, Portland, argued the cause for petitioner on review. Shane A. Reed, of Reed & Associates, Jacksonville, filed the brief.

Kenneth M. Tharp, of Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C., Medford, argued the cause and filed the brief for respondent on review.

Thomas M. Christ, of Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for *amici curiae* Liberty Northwest Insurance Company, Mutual of Enumclaw Insurance Company, State Farm Mutual Automobile Insurance Company, Oregon Mutual Insurance Company, Safeco Insurance Company, and the American Insurance Association. With him on the brief was Thomas W. Brown, Portland.

Meagan A. Flynn, of Preston Bunnell & Stone, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

Kistler, J., dissented and filed an opinion in which Carson, C. J., and Balmer, J., joined.

## GILLETTE, J.

In this automobile insurance case, the issue is whether an insurer is entitled to offset the amount that an injured insured received in workers' compensation benefits against the amount that the insurer otherwise would have been obligated to pay to the insured under the insured's underinsured motorist (UIM) coverage in a policy issued by the defendant insurer. The issue arose when plaintiff[1] submitted a claim under the UIM coverage. Defendant responded that the policy entitled it to offset the workers' compensation payments that plaintiff had received and that, in the offset, defendant owed plaintiff nothing. Plaintiff then brought this contract action against defendant. Defendant moved for summary judgment respecting the offset for workers' compensation benefits. The trial court granted defendant's motion, and, on appeal, the Court of Appeals affirmed that ruling without opinion. *Bergmann v. Hutton*, 186 Or App 566, 65 P3d 1132 (2003). We allowed review and, for the reasons that follow, now reverse the decision of the Court of Appeals and the judgment of the trial court.

Because we are reviewing a grant of summary judgment, we view the facts from the summary judgment record, and all reasonable inferences that may be drawn from them, in the light most favorable to the nonmoving party, in this case plaintiff insured. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004).

In October 1998, plaintiff was seriously injured in an automobile collision caused by the failure of another driver, defendant Hutton, to stop at a red light. At the time of the accident, plaintiff was 51 years old. She worked at a bank and earned a salary of more than $3,000 per month. After the accident, plaintiff's condition was such that she was unable to return to work and had difficulty participating in normal life activities.

At the time of the accident, defendant Farmers Insurance Company (Farmers) insured plaintiff under an

---

[1] At oral argument before this court in this case, counsel informed the court that plaintiff now is deceased. Her estate has continued as the party in interest.

automobile insurance policy. That policy provided for uninsured motorist/underinsured motorist (UM/UIM) coverage with a liability limit of $100,000. Farmers also insured Hutton, who admitted responsibility for the accident, under a policy that had a liability limit of $25,000.

Plaintiff's damages resulting from the accident totaled more than $650,000.[2] Farmers tendered the policy limit of $25,000 under Hutton's policy, and plaintiff received a total of $107,652 in workers' compensation benefits. Because those amounts did not fully compensate plaintiff for her losses, plaintiff made a claim for damages under the UIM provisions of her automobile insurance policy.[3]

Farmers denied that claim. Farmers contended that the policy and applicable law entitled it to deduct from the amount that it otherwise would owe to plaintiff under the UIM provision of its policy both the amount tendered on behalf of the negligent driver and the amount that plaintiff received in workers' compensation benefits. Because those amounts collectively exceeded the policy limit of $100,000, Farmers asserted that plaintiff's UIM benefits were exhausted and Farmers owed her nothing.

Plaintiff filed the present action against Farmers for breach of contract.[4] Farmers answered, denying any liability, and moved for summary judgment. Farmers argued, among other things, that the Court of Appeals had held, in *California Casualty Indemnity Exchange v. Maritzen*, 123 Or App 166, 860 P2d 259 (1993), and in *Pitchford v. State Farm Mutual Auto. Ins. Co.*, 147 Or App 9, 934 P2d 616 (1997), that UIM policy provisions similar to the one at issue here permitted the insurer to offset the amount that the insured received in workers' compensation benefits against the insured's UIM policy limits. According to Farmers, those Court of Appeals holdings were dispositive and mandated a ruling in its favor

---

[2] Plaintiff submitted an affidavit in which she stated that her total current and future damages for lost wages and medical expenses would exceed $650,000. For purposes of plaintiff's summary judgment motion, Farmers did not dispute that amount.

[3] Plaintiff rejected Farmers' offer of settlement on behalf of Hutton.

[4] Plaintiff also sued Hutton for negligence, but she settled that claim and the court has dismissed it.

in the instant case. The trial court agreed and granted Farmers' summary judgment motion. As noted, the Court of Appeals affirmed without opinion. We allowed plaintiff's petition for review.

In this court, plaintiff contends that, under the governing statute, ORS 742.504(7)(c)(B), the workers' compensation benefits that she received are properly deducted from the total amount that she legally would be entitled to recover in damages from the owner of the underinsured vehicle, *i.e.*, from $650,000, rather than from the (lower) liability limit under her UIM policy ($100,000), and that the Court of Appeals' earlier decisions to the contrary were erroneous.

We begin by examining the statutes pertinent to UIM coverage.[5] ORS 742.502 contains a general UM and UIM coverage mandate. That statute requires, first, that all motor vehicle liability policies in Oregon provide UM coverage. ORS 742.502(1). Moreover, those policies generally must provide the same limits for UM coverage as for bodily injury liability coverage.[6] ORS 742.502(2)(a). Second, ORS 742.502(2)(a) requires the inclusion of UIM coverage in any policy providing for UM coverage in excess of the financial responsibility limits. That statute defines UIM coverage as "coverage for damages or death caused by accident and arising out of the ownership, maintenance, or use of a motor vehicle *that is insured for an amount that is less than the insured's uninsured motorist coverage.*" *Id.* (emphasis added). That subsection also provides a general formula for calculating UIM benefits. Under that subsection, "[u]nderinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies." *Id.*

---

[5] Plaintiff and Farmers agree that, because the policy wording essentially tracks the statute and because, in any event, under ORS 742.504 the policy cannot provide less favorable coverage to an insured than the coverage required under that section, this case turns on the proper interpretation of the applicable statutes. Accordingly, they have confined their arguments to issues of statutory construction rather than construction of the policy itself. We agree and proceed in the same way.

[6] The insured may elect lower UM limits than the limits set out in the policy for bodily injury liability by doing so in writing, but the insured may not elect limits lower than the minimum amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. ORS 742.502(2)(a).

■    In addition, ORS 742.502(4) provides, among other things, that UIM coverage is subject to ORS 742.504, which sets out required provisions for UM coverage. The dispute in this case centers around ORS 742.504(7), which provides as follows:

> "(a)  The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

> "* * * * *

> "(c)  *Any amount payable under the terms of this coverage* because of bodily injury sustained in an accident by a person who is an insured under this coverage *shall be reduced by*:

> "(A)  All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy; and

> "(B)  The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law."

(Emphasis added.)

The parties assign different meanings to that statutory subsection and, in particular, to the highlighted phrase, "any amount payable under the terms of this coverage," in ORS 742.504(7)(c). Farmers contends that ORS 742.504(7) generally deals with limits of insurer liability, as evidenced by the express reference to that concept in ORS 742.504(7)(a). Accordingly, Farmers contends that it is clear that the operative phrase in paragraph (c) also refers to the limit of the insurer's liability as set out on the declarations page of the policy. As noted, ORS 742.504(7)(c)(B) permits the insurer to

deduct the amount of workers' compensation benefits that the insured has received from the "amount payable under the terms of this coverage," which, according to Farmers, is its liability limit. Under Farmers' interpretation, then, Farmers owes plaintiff nothing, because plaintiff has received more in workers' compensation benefits and from Hutton than the limit of Farmers' UIM liability under plaintiff's policy.

Plaintiff, by contrast, asserts that the phrase "any amount payable under the terms of this coverage" in ORS 742.504(7)(c) refers to the total amount that the insured legally would be entitled to recover from the tortfeasor or, in other words, in this case, the insured's *damages*. Here, plaintiff's damages so far exceed the amount that plaintiff received in workers' compensation benefits that, even after making that adjustment, Farmers' liability limit is not met. Under plaintiff's interpretation, she is entitled to the amount of her $100,000 UIM coverage less the $25,000 tendered on Hutton's behalf, or $75,000.[7]

■ To resolve the question of which of those competing interpretations is correct, we turn to the now-familiar methodology for construing statutes that this court summarized in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that methodology, we first examine the text of the statute, in context, in an effort to discern the intent of the legislature. *Id.* at 610. If the meaning of the statute is clear at that level of analysis, then further inquiry is unnecessary. *Id.* at 611.

We begin with the text of ORS 742.504(7)(c). We observe that the complete description of the amount from which the enumerated deductions shall be taken is as follows: "[a]ny amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is insured under this coverage * * *." Although that clause, standing alone, does not help us much, its meaning

---

[7] Plaintiff initially seemed to be arguing to the trial court that the $25,000 tendered on Hutton's behalf should not be offset against Farmers' liability limit because plaintiff had refused that tender and therefore had not actually received that amount. She appears to have abandoned that argument before this court. As we understand plaintiff's argument before this court, plaintiff does not now dispute that ORS 742.502(2)(a) entitles her to UIM benefits reduced by the amount that she recovered under Hutton's insurance policy.

becomes clearer when we consider it in the context of ORS 742.504 as a whole.

For example, the phrase "this coverage" quite clearly is a general reference to UM coverage, which is the express subject of ORS 742.504. That is apparent because ORS 742.504 begins with the preamble, "[e]very policy required to provide *the coverage specified in ORS 742.502* shall provide uninsured motorist coverage * * *." (Emphasis added.) Relatedly, the cross-referenced statute, ORS 742.502, provides, in part, "[e]very motor vehicle liability policy * * * shall provide therein or by indorsement thereon uninsured motorist coverage * * *." ORS 742.502(1). Moreover, by virtue of ORS 742.502(4), which provides that "[u]nderinsurance coverage shall be subject to ORS 742.504, the phrase "this coverage" in ORS 742.504(7)(c) also is a reference, in the appropriate case, to UIM coverage.

■ The wording of those statutes also makes clear that the term "coverage" is not synonymous with the term "policy." As is evident from the quoted material above, ORS 742.502 and ORS 742.504 require every "policy" to provide certain kinds of "coverage." "Coverage," thus, is a broad term; it is the universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy.

■ By contrast, the "policy" is the specific contract between the insurer and the insured, which, by statute, is required to include certain terms. Under ORS 742.450(1), "[e]very motor vehicle liability insurance *policy* issued for delivery in this state shall state the name and address of the named insured, *the coverage afforded by the policy*, the premium charged therefor, the policy period *and the limits of liability*."[8] (Emphasis added.) The terms of a *policy* include limits on the insurer's liability; the terms of the *coverage* do not. Indeed, the only "limits" for coverage set out in the statutes pertaining to motor vehicle insurance are *minimum* limits required to meet the financial responsibility laws. *See* ORS 742.450(4) (requiring motor vehicle liability insurance policies to provide liability coverage to at least limits specified in

[8] Similarly, ORS 742.502(2)(a) provides that "[a] motor vehicle bodily injury liability *policy shall have the same limits for uninsured motorist coverage* as for bodily injury liability coverage * * *." (Emphasis added.)

ORS 806.070); ORS 742.500(1) (" '[u]ninsured motorist coverage' means coverage within the terms and conditions specified in ORS 742.504 insuring the insured * * * in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070"); ORS 806.080(1)(c) (requiring motor vehicle insurance policies to provide "minimum limits of coverage required under ORS 806.070"); ORS 806.070 (setting out schedule for minimum required payment of judgment).

■    In addition, we observe that the phrase "*any amount payable* under the terms of this coverage *because of bodily injury sustained in an accident* by a person who is insured under this coverage" tracks the wording of ORS 742.504(1)(a), which defines the insurer's liability for UM *coverage*. That paragraph provides,

"The insurer will pay *all sums which the insured* * * * *shall be legally entitled to recover as general and special damages* from the owner or operator of an uninsured vehicle *because of bodily injury sustained by the insured caused by accident* and arising out of the ownership, maintenance or use of such uninsured vehicle."

(Emphasis added.) Thus, the amount that is "payable" by the insurer under the "coverage" is "all sums" that the insured is "legally entitled to recover" as a result of an accident with an uninsured motorist. In the usual case, that amount would be equal to the insured's total damages, although there may be cases in which the insured would not be "legally entitled to recover" all of his or her damages, such as when the tortfeasor is immune from liability or when there has been a determination of comparative fault.[9] Notably, in defining the insurer's liability for coverage, ORS 742.504(1)(a) does not speak to any *limits* on the insurer's liability under a policy.

Farmers asserts that ORS 742.504(7)(c) authorizes deductions from the amount payable "under *the terms of this coverage*" and argues that plaintiff "fails to note that the sums payable under ORS 742.504(1) and the terms of her

---

[9] Neither of those considerations applies here.

coverage are *limited by her policy limits*." (Emphasis in original.) That is, according to Farmers, under the terms of plaintiff's UM/UIM *policy*, the amount payable is never more than Farmers' limit of liability and, therefore, the "amount payable" is the amount of damages up to the limit of Farmers' liability as stated in the declarations. As is evident from the discussion above, we reject that argument.

■ We observe at the outset that Farmers unintentionally (but pivotally) muddies the waters by referring to the "terms of *her* coverage" and equating that concept to the terms of plaintiff's *policy*. That is, by referring to "*her*" (plaintiff's) coverage, Farmers conflates the contract that it and plaintiff entered into, *i.e.*, the policy, with the statutory reference to the "terms of *this* coverage." (Emphasis added.) "This coverage" in ORS 742.504(7)(c) is UM/UIM coverage as defined in the motor vehicle liability statutes, and that coverage does not contain a maximum limit on liability.

The distinction that we draw here is borne out by the text of ORS 742.504(7). The first subsection deals with the "limit of liability stated in the declarations." As noted earlier, ORS 742.504(7)(a) provides, in part:

> "The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as a result of any one accident * * *."

■■ The term "declarations," while not defined in the statute, is an unambiguous reference to a page of the policy itself. In common parlance, it is the first page of an insurance policy and summarizes the terms of that policy, including, among other things, setting out the insurer's limit on liability. ORS 742.504(7)(c), by contrast, does not refer to the policy in any way. It does not use the words "policy" or "declarations;" instead, it refers simply to "the terms of this coverage."

Farmers argues that, because paragraphs (a) and (c) are found in the same part of the statute, ORS 742.504(7)(a) provides relevant and decisive context for interpreting ORS 742.504(7)(c). According to Farmers, ORS 742.504(7)(a) "unequivocally defines the 'amount payable under the terms

of this coverage' as the limit of liability stated in the declarations page." However, it does not follow from the fact that the first paragraph of ORS 742.504(7) deals with an insurer's limits of liability that the third paragraph does so as well. Neither does it follow that the third paragraph somehow is subject to the first. A careful reading of ORS 742.504(7) demonstrates that the first paragraph addresses subject matter entirely different from that covered in subsequent paragraphs. By its plain terms, ORS 742.504(7)(a) deals with the "limit of liability stated in the declarations" and describes the operation of that limit when more than one person is injured in an accident. ORS 742.504(7)(c), on the other hand, concerns reductions from "any amount payable" because of bodily injury under "the terms of this coverage." As discussed above, "this coverage" is UM/UIM coverage and "any amount payable" refers to the amount that the insurer *potentially* could be obligated to pay on account of bodily injury that the insured sustains in an accident with an uninsured or underinsured vehicle.

Finally, we think that it is noteworthy that ORS 742.504(7)(c) does not use the words "limit of liability" and, in particular, does not refer to the "amount payable *up to the insurer's liability limit.*" The legislature has directed this court, when interpreting a statute, "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted." ORS 174.010. Moreover, as this court stated in *PGE*, "use of a term in one section [of a statute] and not in another section of the same statute indicates a purposeful omission." 317 Or at 611. Given that the UM/UIM statute repeatedly employs the phrases "limits of liability" and "liability limits," we think that, if the legislature had intended the phrase "any amount payable under the terms of this coverage" in ORS 742.504(7)(c) to mean the insurer's liability limit, it would have done so expressly.

Farmers maintains that interpreting ORS 742.504(7)(c) as permitting offsets from the insured's damages rather from the insurer's liability limit would produce an unreasonable result. That is, according to Farmers, if that interpretation were to prevail, "insurers could place no policy limits on UM/UIM insurance benefits under Oregon law." It would "abrogate[ ] the concept of a UM/UIM policy limit

when damages exceed that limit." Farmers does not elaborate, but its argument seems to be based on the fact that, in addition to an offset for workers' compensation payments in ORS 742.504(7)(c)(B), ORS 742.504(7)(c)(A) provides that the "amount payable under the terms of this coverage" also is to be reduced by "[a]ll sums paid on account of such bodily injury by or on behalf of the owner of the uninsured vehicle." Apparently, Farmers thinks that an interpretation that permits the amount that an insured receives from an uninsured tortfeasor to be offset against the total amount of damages that the insured would be entitled to recover on account of his or her injuries would vitiate other provisions of the statute, including, importantly, those pertaining to the insurer's UIM liability limit.

That concern is misplaced. First, no matter what types of offsets ORS 742.504 permits, the maximum amount for which the insurer is liable under its UM coverage is the limit of liability set out on the declarations page of the policy. ORS 742.504(7)(a). Second, ORS 742.502(2)(a) essentially defines the limit of the insurer's liability in the UIM context. That section provides that UIM benefits are "equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies." Nothing in ORS 742.504(7)(c), and certainly nothing in the interpretation of that provision that we announce here, renders those provisions of the statute inoperable. Thus, even if the insured's damages continue to exceed the policy limits after appropriate deductions from the total damages are taken, the maximum amount for which the insurer will be liable is the limit of liability set out in the declarations. And if, after reducing the amount that the insured legally would be entitled to recover in the various ways permitted in ORS 742.504(7), the resulting amount is less than the insurer's liability limit, then that resulting amount is the maximum that the insurer will have to pay. The insurer may have to pay, but the payment will never exceed the liability limits that are stated on the declarations page. No unreasonable result obtains.

Finally, Farmers contends that this court, in its earlier opinion in *Grijalva v. Safeco Ins. Co.*, 329 Or 36, 985 P2d 784 (1999), held that the meaning of ORS 742.504(7)(c) is

clear and that that section unambiguously provides, in Farmers' words, that "in determining UIM proceeds, the amount the claimant received from other sources should be deducted from the UM/UIM policy limits." Farmers reads too much into this court's opinion in *Grijalva*.

In *Grijalva*, the plaintiff and her coworker were driving together in the coworker's car when it was struck by a car driven by an underinsured motorist, Dawson. The facts recite that the plaintiff "suffered damages in excess of $100,000." 329 Or at 39. The plaintiff received some compensation from Dawson's insurer, as did the coworker. In addition, both the plaintiff and the coworker received workers' compensation benefits. Neither the plaintiff nor the coworker was made whole by those recoveries, and, therefore, the plaintiff and the coworker filed claims under the coworker's UIM policy. The insurer paid the coworker part of the amount that she sought but denied the plaintiff's claim entirely, on the ground that it was entitled to offset the amounts that *both* the plaintiff and the coworker received from Dawson's insurer and in workers' compensation benefits from the amount of the coworker's liability limit. After those reductions were taken, there was nothing left for the plaintiff.

The precise issue before this court in *Grijalva* was whether ORS 742.504(7)(c) permitted the insurer to deduct amounts paid to *other claimants* from other sources because of injuries that they sustained in a single accident with an underinsured motorist. This court held that the UIM statute did not authorize those reductions. In *Grijalva*, the court assumed that the amount that the plaintiff herself had received in workers' compensation benefits was a proper offset, but that issue expressly was not before the court. 329 Or at 41.[10] This court's opinion in *Grijalva* does not assist Farmers.

---

[10] Moreover, and in any event, it was not clear from this court's opinion in *Grijalva* that the amount of the plaintiff's damages exceeded the insurer's limit of liability. As noted, the opinion recited that the plaintiff's damages were "in excess of $100,000," which was the liability limit under the coworker's UIM policy. If the amount of the plaintiff's damages was approximately equal to the liability limit, then the result would have been identical whether the court deducted the amount that the plaintiff recovered in workers' compensation benefits from her damages or from the insurer's liability limit.

To summarize, we hold that the phrase "any amount payable under the terms of this coverage" in ORS 742.504(7)(c) refers to the amount that the insured legally would be entitled to recover from the owner or operator of an uninsured or underinsured vehicle on account of bodily injury sustained by the insured in an accident caused by the ownership or operation of the uninsured or underinsured vehicle.

In the present case, plaintiff had an underinsured motorist coverage policy with a liability limit $100,000. She received workers' compensation benefits totaling approximately $107,000. Applying a policy provision that it contended was consistent with ORS 742.504(7)(c)(B), Farmers reduced the liability limit by the amount that plaintiff received in workers' compensation benefits and concluded that it owed her nothing under her UIM policy. Notwithstanding the fact that plaintiff alleged in her complaint that she had sustained over $650,000 in damages as a result of the accident caused by the underinsured motorist, Hutton, the trial court agreed with Farmers that, as a matter of law, plaintiff was not entitled to recover under her UIM policy. Accordingly, it awarded Farmers summary judgment.

As is evident from the discussion above, Farmers should not have applied the amount that plaintiff received in workers' compensation benefits to reduce the amount of Farmers' liability to plaintiff under the policy. Instead, Farmers should have applied those benefits in reduction of the total amount of damages that plaintiff legally would have been entitled to receive from Hutton because of bodily injury sustained in the accident that Hutton caused. Accepting for purposes of review on summary judgment that plaintiff's damages well exceeded both the amount that plaintiff received in workers' compensation benefits and the amount of Farmers' liability limit under the UIM policy, Farmers was liable to plaintiff for some amount under that policy. It follows that the trial court's ruling granting summary judgment to Farmers was in error. Likewise, the Court of Appeals erred in affirming that ruling. The case must be remanded to the circuit court to determine what amount is owing to plaintiff.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**KISTLER, J.,** dissenting.

The majority holds that, in computing uninsured motorist benefits, a statutory offset for workers' compensation payments should be deducted from the amount of the damages that the insured sustained. In my view, the text and the context of the governing statute require a different result. They require that any workers' compensation payments be deducted from the amount of the insured's damages up to the limits of liability. I respectfully dissent.

ORS 742.504(7)(c) provides that a statutory offset for workers' compensation payments shall be deducted from "[a]ny amount payable under the terms of this coverage." The question that this case presents is what that quoted phrase means. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 859 P2d 1143 (1993) (explaining statutory construction methodology). The text of ORS 742.504(7)(c) does not answer that question. The text does not identify the type of coverage to which "this coverage" refers, nor does it identify what "the terms" of that coverage are. The context, however, resolves both those issues.

ORS 742.502(1) requires that every motor vehicle liability policy provide uninsured motorist coverage—coverage for bodily injuries that the insured sustains in a motor vehicle accident with an uninsured driver. In addition to requiring uninsured motorist coverage, ORS 742.504 sets out the minimum terms and conditions of that coverage that every motor vehicle liability policy must contain. *See Vega v. Farmers Ins. Co.,* 323 Or 291, 301-02, 918 P2d 95 (1996) (explaining that motor vehicle liability policies may not contain less favorable terms than those set out in ORS 742.504).[1]

Two propositions follow from this statutory context. First, the phrase "this coverage" in ORS 742.504(7)(c) refers

---

[1] ORS 742.502(2)(a) requires that motor vehicle liability policies also provide underinsured motorist coverage. As the majority notes, underinsured motorist coverage generally is subject to the same statutory requirements as uninsured motorist coverage.

to uninsured motorist coverage. Second, the phrase "the *terms* of this coverage" refers to the terms and conditions of coverage set out in ORS 742.504. ORS 742.500(1) makes that point clear. ORS 742.500(1) provides that " '[u]ninsured motorist coverage' means *coverage within the terms and conditions specified in ORS 742.504.*" (Emphasis added.) As the emphasized portion of ORS 742.500(1) demonstrates, when the legislature referred to the "amount payable under the *terms* of this coverage" in ORS 742.504(7)(c), it meant the amount payable under all the terms and conditions specified in ORS 742.504.

Two of those terms are relevant here. First, ORS 742.504(1)(a) defines the scope of uninsured motorist coverage as "all sums [that] the insured * * * shall be legally entitled to recover as general and special damages" because of bodily injury caused by an accident with an uninsured driver. Second, ORS 742.504(7)(a) recognizes that the limit of liability stated in the declarations is the upper limit that an insurer must pay each insured for the damages that he or she sustains. Reading those two provisions together, the terms of the coverage stated in ORS 742.504 require an insurer to pay the amount of the insured's damages up to the insurer's limit of liability.

The text and context of ORS 742.504(7)(c) thus yield a straightforward rule: The "amount payable under the terms of this coverage" is the amount of the insured's damages up to the insurer's limit of liability. It follows that, if the insured's damages are less than the limit of liability, then the "amount payable" is the amount of the damages that the insured sustained and any workers' compensation payments should be deducted from that amount. If, however, the insured's damages exceed the limit of liability, then the "amount payable" is the limit of liability and any workers' compensation payments should be deducted from that amount.

In this case, the insured's damages exceed $650,000, and the insurer's limit of liability is $100,000. Under the terms of the coverage stated in ORS 742.504, the amount that the insurer has to pay is $100,000 (the amount of the insured's damages up to the limit of liability). That is the

"amount payable" from which ORS 742.504(7)(c) requires that the statutory offset for workers' compensation payments be deducted. Although the legislature could have adopted a different rule, the text and context of ORS 742.504(7)(c) demonstrate that this is the rule that it adopted. *Accord Williams v. American States Ins. Co.*, 163 Or App 179, 986 P2d 1260 (1999), *adh'd to on recons*, 166 Or App 145, 997 P2d 892 (2000) (adopting same interpretation of ORS 742.504(7)(c)); *Pitchford v. State Farm Mutual Auto. Ins. Co.*, 147 Or App 9, 16, 934 P2d 616, *rev den*, 325 Or 621 (1997) (same); *California Casualty Indemnity Exchange v. Maritzen*, 123 Or App 166, 171, 860 P2d 259, *rev den*, 318 Or 97 (1993) (same).

The majority reaches a different conclusion. Relying on ORS 742.450(1), it starts from the premise that coverage and limits on liability are separate concepts. It follows, the majority concludes, that the phrase "the terms of this coverage" does not refer to the limit of liability stated in ORS 742.504(7)(a). Rather, it refers to the scope of coverage stated in ORS 742.504(1)(a). The majority also reasons that interpreting the phrase the "amount payable under the terms of this coverage" to mean the amount of the insured's damages up to the limits of liability impermissibly inserts words into the text of ORS 742.504(7)(c) that the legislature omitted.

The majority's second point is at odds with its own interpretation. As the majority notes, and I agree, the phrase "the terms of this coverage" gains meaning only from its context. The majority looks to one contextual source—ORS 742.504(1)(a)—and holds that the phrase refers to the total amount of damages that an insured legally may recover from an uninsured driver. I would look to a different source—all the terms in ORS 742.504—and hold that the phrase refers to the amount of damages that the insured may recover up to the limits of liability. Both interpretations go beyond the words of ORS 742.504(7)(c). Neither, I submit, impermissibly inserts words into the text of ORS 742.504(7)(c). Rather, both look to context to identify the "terms" to which ORS 742.504(7)(c) refers.

The majority's more substantial point is that, under ORS 742.450(1), coverage and limits of liability are separate concepts. As noted, the majority concludes that, because the

two concepts are separate, the statutory reference to "the terms of this coverage" does not include any limit on liability. The majority's reasoning is difficult to square with ORS 742.500(1). As the majority observes, the phrase "this coverage" in ORS 742.504(7)(c) refers to uninsured motorist coverage, and ORS 742.500(1) defines "uninsured motorist coverage" as "coverage within the terms and conditions specified in ORS 742.504." By definition, the "terms" to which ORS 742.504(7)(c) refers are *all* the terms in ORS 742.504, which includes both the scope of coverage in ORS 742.504(1)(a) and the limit on liability in ORS 742.504(7)(a).

To be sure, as the majority notes, ORS 742.450(1) provides that every motor vehicle liability policy "shall state [the insured's name and address], the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability." That subsection thus distinguishes coverage from limits of liability. However, to the extent that ORS 742.450(1) points in a different direction from ORS 742.500(1),[2] the latter statute controls. Not only did the legislature enact ORS 742.500(1) after ORS 742.450(1),[3] but ORS 742.500(1) is the more specific statute. *See Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002) (explaining methodology for resolving conflicting statutes). By its terms, ORS 742.500(1) defines what uninsured motorist coverage means for the purposes of ORS 742.504(7)(c).

Because the text and context of ORS 742.504(7)(c) demonstrate that the legislature intended that workers' compensation payments should be deducted from the amount of

---

[2] In my view, the two statutes are not in conflict. As ORS 742.450(1) recognizes, coverage and limits of liability are separate concepts. But ORS 742.504(7)(c) does not refer simply to uninsured motorist coverage. Rather, it refers to "the *terms* of [uninsured motorist] coverage." (Emphasis added.) The terms on which an insurer offers coverage typically include limitations, such as limits of liability. The phrase "the terms of [uninsured motorist] coverage" is broad enough to include limits of liability, as ORS 742.500(1) requires, even though coverage and limits of liability are different concepts, as ORS 742.450(1) recognizes.

[3] The legislature enacted ORS 742.504 in 1967 and ORS 742.450(1) in 1955. *Compare* Or Laws 1967, ch 482, §§ 1-3 (enacting ORS 742.500 to 742.506), *with* Or Laws 1955, ch 429, § 23 (enacting ORS 742.450(1)).

the insured's damages up to the limit of liability, I respect-
fully dissent.

Carson, C. J., and Balmer, J., join in this dissent.