Argued and submitted January 28, certified question answered
September 17, 2021

Travis BATTEN,
*Plaintiff,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
*Defendant.*

United States District Court for the District of Oregon
319CV01200MC

ESTATE OF JOHN WESLEY COUNTS,
*Plaintiff,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
*Defendant.*

United States District Court for the District of Oregon
119CV01299CL

Cesar RIVERA,
*Plaintiff,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
*Defendant.*

United States District Court for the District of Oregon
319CV01325SI

Lori CHISOLM,
*Plaintiff,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
*Defendant.*

United States District Court for the District of Oregon
319CV2027IM

(SC S067887)

495 P3d 1222

In each of four consolidated cases, State Farm Mutual Automobile Insurance Company (State Farm) had issued multiple policies of uninsured/underinsured motorist (UM/UIM) coverage that applied to the plaintiff's losses. But in each case, State Farm had refused to pay more than the amount that it would have paid under the single policy with the highest limit of liability, citing a policy term that limited coverage in that way when an insured's losses were covered under multiple State Farm policies. The parties disputed whether State Farm's "other coverage" term violated the statutory requirement that "[e]very policy" providing UM/UIM coverage in Oregon must provide "coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if" the model policy terms in ORS 742.504 "were set forth in the policy." The court accepted a certified question from the United State District Court for the District of Oregon to resolve that dispute. *Held*: The "other coverage" term in State Farm's policies is unenforceable because it makes the UM/UIM coverage less favorable to State Farm's insureds than the coverage that would have been available under the model coverage terms that the legislature has specified in ORS 742.504.

The certified question is answered.

En Banc

On certified question from the United State District Court for the District of Oregon; certified order dated May 27, 2020; certification accepted June 2, 2020.

Travis Eiva, Eiva Law, Eugene, and Michael Brian, Brian Law Firm, LLC, Medford, argued the cause and filed the briefs for plaintiffs.

Ralph Spooner, Spooner & Much, PC, Salem, argued the cause and filed the briefs for defendant. Also on the brief was David E. Smith, Salem.

Lisa T. Hunt, Law Office of Lisa T. Hunt, LLC, Lake Oswego, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

FLYNN, J.

The certified question is answered.

**FLYNN, J.**

These consolidated cases reach us on a certified question from the United States District Court for the District of Oregon. We are asked to determine whether Oregon law precludes an insurer from limiting its liability for uninsured/underinsured motorist (UM/UIM) benefits on the basis that another policy also covers the insured's losses. Each plaintiff suffered injuries caused by an uninsured or underinsured motorist, and each plaintiff incurred resulting damages that qualify as covered losses under multiple motor vehicle insurance policies issued by defendant State Farm Mutual Automobile Insurance Company (State Farm). Each plaintiff has alleged a loss that exceeds the declared liability limits of any single applicable policy and seeks to recover the excess under additional applicable policies, up to the combined total of the limits of liability. In each case, however, State Farm has refused to cover the excess loss, citing a term in the policies that allows State Farm to limit its liability to the amount that it agreed to pay under the single policy with the highest applicable limit of liability. We conclude that that term makes State Farm's uninsured motorist coverage less favorable to its insureds than the model coverage that the legislature has required and, thus, is unenforceable.

## FACTS

The pertinent facts are undisputed for purposes of the legal question before us. Each plaintiff was insured under multiple State Farm motor vehicle insurance policies that—as required by Oregon law—included UM/UIM coverage.[1] Each plaintiff suffered losses that are within the scope of that UM/UIM coverage: Batten was a passenger in a rented car when he was severely injured in a head-on collision with an underinsured motorist; Counts was riding his

---

[1] The coverage details have no bearing on our legal analysis, but we set them out to provide factual context for the disputes. Batten was covered under three State Farm policies, each with a "declarations page" specifying that State Farm's limits of liability were $250,000 per person. Counts was covered under two State Farm policies, each with a "declarations page" specifying that State Farm's limits of liability were $250,000 per person. And Chisolm and Rivera were covered under three State Farm policies apiece, each with a "declarations page" specifying that State Farm's limits of liability were $100,000 per person.

bicycle when he was injured and later died after a collision with an underinsured motorist; Chisholm was a pedestrian when she was struck and severely injured by an under-insured motorist; and Rivera was a pedestrian when he was struck and severely injured by an uninsured motorist.[2]

Each plaintiff has alleged that the collision caused the insured to suffer covered losses in an amount that greatly exceeds the maximum payment available under any single applicable policy, and each plaintiff sought payment for the additional covered losses under the additional applicable State Farm policies.[3] But each applicable State Farm policy contains a term that limits State Farm's liability for its insured's UM/UIM losses, in the event that the losses are covered under "Other Uninsured Motor Vehicle Coverage," to the amount that State Farm would have paid if the insured's losses were covered only under the single policy with the highest liability limit.[4] Citing that term of the policies, State Farm paid each plaintiff an amount equal to the limit of one applicable policy—$250,000 each to Batten and Counts, $100,000 each to Chisolm and Rivera—and has refused to pay more.

The plaintiffs filed separate actions contending that Oregon law precludes State Farm from limiting its UM/UIM coverage in that way and seeking to recover the unsatisfied loss under the other applicable policies. State Farm removed all four actions to the United States District Court

---

[2] UM/UIM coverage is "coverage for bodily injury or death if the amount of liability insurance recovered is less than the sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages for bodily injury or death that is caused by accident and that arises out of owning, maintaining or using an uninsured vehicle." ORS 742.502(5).

[3] Batten's complaint alleges damages of almost $5 million, Counts's complaint alleges damages of more than $500,000, Chisolm's complaint alleges damages of more than $3 million, and Rivera's complaint alleges damages of more than $600,000.

[4] In the parties' briefing, State Farm refers to the term as an "anti-stacking" provision, and plaintiffs refer to it as a "negation provision." Although both labels suggest that the challenged term serves to limit the payments to which the insured would otherwise be entitled under the applicable UM/UIM policies, neither label quite captures that concept. We refer to the term, instead, as an "other coverage" limitation or, simply, an "other coverage" term because it limits the payments that State Farm will make under one of its UM/UIM policies based on the existence of "other coverage" that applies to the insured's loss.

for the District of Oregon and filed counterclaims seeking a declaration that the "other coverage" term in its policies is valid and enforceable. The parties in each case then filed competing motions for summary judgment asking the court to resolve the legal question presented by State Farm's counterclaim, and, before those motions were resolved, the district court certified the legal question to this court. We accepted the certified question and consolidated the cases for briefing and argument.

## DISCUSSION

In Oregon, insurance coverage for loss caused by an uninsured or underinsured motor vehicle is almost entirely a creature of statute. The legislature has required that "[e]very motor vehicle liability policy" must provide "uninsured motorist coverage," which includes "underinsurance coverage." ORS 742.502(1), (3). In general, UM/UIM coverage is insurance against the loss that arises when an insured suffers "bodily injury or death" related to a motor vehicle accident for which another person is at fault and the at-fault person either has no motor vehicle liability insurance or insufficient liability insurance to pay the damages that the injured person or heirs of the injured person would have been "legally entitled to recover" in a civil action against the at-fault person. ORS 742.502(5); ORS 742.504(2). The legislature has set out in ORS 742.504 "a comprehensive model" policy of UM/UIM coverage. *Vega v. Farmers Ins. Co.*, 323 Or 291, 302, 918 P2d 95 (1996). The statute specifies that "[e]very policy" providing the mandated UM/UIM coverage must provide "coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if" those model policy terms "were set forth in the policy." ORS 742.504(1). As we explained in *Vega*, the legislature intended that the terms of an actual policy of UM/UIM coverage could vary from the terms of the statutory model policy "only in the sense that terms that disfavor insureds may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added." 323 Or at 302. Any added term that causes the UM/UIM coverage under a policy to be less favorable to the insured than the model policy is "unenforceable." *Erickson v. Farmers Ins. Co.*, 331 Or 681, 685, 21 P3d 90 (2001).

The disputed term that appears in each State Farm policy that covers the loss of each insured provides:

> "If Other Uninsured Motor Vehicle Coverage
> of Any Kind Applies
>
> "1. If Uninsured Motor Vehicle Bodily Injury and Property Damage Coverage provided by this policy and Uninsured Motor Vehicle Coverage of any kind provided by one or more other vehicle policies issued to you or any resident relative by the State Farm Companies apply to the same bodily injury or property damage, then:
>
> "a. such Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and
>
> "b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment."

Plaintiffs contend that the "other coverage" limitation in State Farm's policy is an added term that causes the coverage to be less favorable to the insured than the coverage that the legislature has required. Depending on how State Farm implements the "other coverage" limitation in a particular case, State Farm either treats the additional policies as irrelevant—as providing no source of payment toward the sum that the insured would be "legally entitled to recover as damages" from the uninsured or underinsured motorist—or it treats the payments under each applicable policy as capped at a fraction of the amount that the policy declares to be State Farm's "limit of liability." Plaintiffs contend that no provision of the "model" policy authorizes that result and, consequently, that State Farm's "other coverage" limitation is unenforceable. Plaintiffs bolster their construction of ORS 742.504 by emphasizing that, in 2015, the legislature removed from the statutory "model" policy a provision that previously authorized insurers to include the kind of "other coverage" limitation that State Farm's policies still contain.

State Farm does not dispute that its insurance policies must include UM/UIM coverage that is at least as

favorable to its insureds as the coverage that ORS 742.504 specifies. And State Farm agrees that ORS 742.504 no longer contains any model term that is comparable to the "other coverage" limitation in the State Farm policies. But State Farm contends that, in 2015, the legislature intended only to preclude a different type of "other coverage" limitation and did not intend to prevent insurers from continuing to include the kind of limitation that is at issue here. According to State Farm, the remaining model terms of ORS 742.504 and the remaining provisions of the other statutes governing UM/UIM coverage continue to permit an insurer to limit its liability if additional policies afford identical UM/UIM coverage to the insured.

The dispute in this case thus turns on whether the UM/UIM coverage that the legislature has required "every policy" to provide continues to accommodate the kind of "other coverage" limitation that State Farm has continued to include in its polices. As with all questions of statutory construction, our responsibility is to "pursue the intention of the legislature if possible," ORS 174.020(1)(a), and we pursue that goal through the analytical framework that we described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that framework, we primarily consider the text and context of a statute because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes," but we also consider legislative history "where that legislative history appears useful to the court's analysis." *Id.* (internal quotation marks omitted).

Both ORS 742.502 and ORS 742.504 have been the subject of extensive prior analysis by this court, and those prior decisions significantly inform our analysis in this case. *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 697-98, 261 P3d 1 (2011) (explaining that court follows its prior constructions of a statute as a matter of *stare decisis* and assumes that issues considered in those cases were correctly decided). Among the most significant of our prior decisions is *Vega*, in which this court construed "ORS 742.504(1) to (12) as setting out a comprehensive model UM/UIM policy that may be varied only in the sense that terms that disfavor insureds

may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added." 323 Or at 302. As State Farm recognizes, there is no longer any particular provision in ORS 742.504 that addresses how UM/UIM coverage will be affected if multiple policies apply to the same injury. So there is no specific provision to which State Farm's "other coverage" limit can be compared. We explained in *Vega*, however, that "the validity of a challenged UIM provision must be tested, not by a direct comparison between the challenged provision with an individual statutory provision but, instead, by a comparison between *coverage* offered by the policy containing the challenged provision and the *coverage* offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12)." 323 Or at 299 (emphases in original). Given that requirement, it is helpful to consider what coverage would be available to plaintiffs under the legislature's "model" policy.

The starting point for that inquiry is the first model term—the promise that

> "the insurer will pay all sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of the uninsured vehicle."

ORS 742.504(1)(a).

The legislature has further illuminated that requirement through a statutory definition of "sums that the insured *** is legally entitled to recover as damages." In general, the concept is defined to mean the amount of damages that the "claimant could have recovered in a civil action from the owner or operator at the time of the injury after determination of fault or comparative fault and resolution of any applicable defenses." ORS 742.504(2)(j)(A). But the legislature has also defined the concept in a way that incorporates by cross-reference several important limits set out in a later subsection of the statute: ORS 742.504(2)(j)(C) provides that "'sums that the insured *** is legally entitled to recover as damages' means the amount of damages that," among other things, "[a]re no larger than benefits payable

under the terms of the policy as provided in subsection (7) of this section."[5]

Most significantly, that cross-reference to "subsection (7)" incorporates into the definition of "sums" that the insurer must pay a requirement that those sums will never exceed "[t]he limit[s] of liability stated in the declarations" for the policy.[6] ORS 742.504(7)(a). The cross-reference also incorporates certain authorized reductions for payments that the insurer receives or has a right to receive from specified other sources—essentially, a deduction for workers' compensation, disability benefits, or similar benefits and a deduction for amounts that the insured failed to collect from the underinsured motorist's insurance carrier (the "unrealized portion" of the underinsured motorist's liability limits). ORS 742.504(7)(b), (c).[7]

---

[5] ORS 742.504(2)(j) specifies that "'sums that the insured *** is legally entitled to recover as damages'" means the amount of damages that:

"(A) A claimant could have recovered in a civil action from the owner or operator at the time of the injury after determination of fault or comparative fault and resolution of any applicable defenses;

"(B) Are calculated without regard to the tort claims limitations of ORS 30.260 to 30.300; and

"(C) Are no larger than benefits payable under the terms of the policy as provided in subsection (7) of this section."

[6] The term "declarations" is not defined in the statute, but "in common parlance," it refers to "the first page of an insurance policy and summarizes the terms of that policy, including, among other things, setting out the insurer's limit on liability." *Bergmann v. Hutton*, 337 Or 596, 606, 101 P3d 353 (2004).

[7] ORS 742.504(7) provides, in full:

"(a) The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

"(b) Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by the amount paid and the present value of all amounts payable on account of the bodily injury under any workers' compensation law, disability benefits law or any similar law.

"(c) Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by the credit given to the insurer pursuant to subsection (4)(d)(C) or (D) of this section [which provides that, if an insured settles with a liable underinsured motorist for less than the limits of the

Thus, the starting point for determining what "the insurer will pay"—"sums that the insured * * * is legally entitled to recover as damages"—requires application of a basic formula: The amount that the insured "could have recovered in a civil action from" the uninsured/underinsured motorist is determined, the amount of any authorized deduction is subtracted, and the remainder is compared to the "limit of liability stated in the declarations." ORS 742.504(1)(a), (2)(j), (7). The insurer then pays whichever amount is lower.

In the consolidated cases before us, State Farm does not contend that any of the authorized reductions in ORS 742.504(7)(b) is applicable, and it does not claim a right to a credit for any "unrealized portion" of the liability limits of any policy insuring the underinsured motorists. State Farm also does not dispute that each plaintiff may be able to prove that the "sums that the insured * * * is legally entitled to recover as damages" exceed the amount stated in the declarations of any one applicable policy as State Farm's limit of liability. Thus, if each plaintiff were insured under only one UM/UIM policy, then the statutory formula would direct State Farm to pay the amount stated in the declarations for that one policy as the limits of State Farm's liability. That appears to be the formula that State Farm applied when determining that it would pay each plaintiff the limits stated in *one* of the applicable policies.

The problem, plaintiffs insist, is that the legislature has required "[e]*very* motor vehicle liability policy" to provide UM/UIM coverage that is paid according to the formula specified in ORS 742.504. ORS 742.502(1), (4) (emphasis added). Yet State Farm's "other coverage" term creates an exception to that formula, allowing State Farm to pay only what it would pay under the UM/UIM coverage of a single

motorist's liability insurance, then the insured must credit to the UM/UIM insurer the 'unrealized portion' of the liability limits].

"(d) The amount payable under the terms of this coverage may not be reduced by the amount of liability proceeds offered, described in subsection (4)(d)(B) or (D) of this section, that has not been paid to the injured person. If liability proceeds have been offered and not paid, the amount payable under the terms of the coverage shall include the amount of liability limits offered but not accepted due to the insurer's refusal to consent. The insured shall cooperate so as to permit the insurer to proceed by subrogation or assignment to prosecute the claim against the uninsured motorist."

policy even though each plaintiff has at least one additional policy that provides the same coverage.

State Farm proposes several alternative paths to its conclusion that the formula does not apply if another UM/UIM policy covers the same loss.[8] It proposes that the definition of "sums" that the insurer must pay accommodates limitations like that accomplished by State Farm's "other coverage" term, it proposes that a legislative intent to allow such limitations can be discerned from text that the legislature failed to add in amending the law in 2015, and it proposes that another statute authorizes the "other coverage" policy term under the circumstances of the cases before us.

With respect to the statutory definition of "sums" that the insurer must pay to the insured, State Farm suggests two ways that the definition could be construed to accommodate its "other coverage" limitation. First, State Farm emphasizes the portion of ORS 742.504(2)(j) that provides:

> "'Sums that the insured * * * is legally entitled to recover as damages' means the amount of damages that:
>
> "* * * * *
>
> "(C)  Are no larger than benefits payable under the terms of the policy * * *."

State Farm points out that its "other coverage" limitation is one of the "terms of the policy" and that it addresses the amount of "benefits payable." Accordingly, State Farm concludes, its "other coverage" limitation must be authorized by the definition of "sums that the insured * * * is legally entitled to recover as damages."

We reject State Farm's proposed construction of ORS 742.504(2)(j), however, because it fails a fundamental rule of statutory construction:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been

---

[8] Although State Farm's "other coverage" term is limited to other policies that it has issued to members of the same household, that limitation plays no role in the rule that State Farm proposes or in its arguments in support of the rule.

omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

ORS 174.010. State Farm's argument would require us to read ORS 742.504(2)(j) as if the legislature had omitted a key limiting clause—as if the statute provided only that "sums that the insured *** is legally entitled to recover" are "no larger than benefits payable under the terms of the policy ~~as provided in subsection (7) of this section~~." (Strikethrough added.) Moreover, State Farm's selective reading of ORS 742.504(2)(j)(C), which is untethered from the limits and reductions that the legislature has expressly authorized in "subsection (7)," would convert the provision to one that effectively allows "benefits payable" to mean whatever amount the "terms of the policy" say is payable. Had the legislature intended to allow the terms of a UM/UIM policy to dictate what benefits are payable, however, there would have been no reason for the legislature to set out specific model terms in ORS 742.504 and no meaning to the requirement that UM/UIM coverage must be "no less favorable in any respect to the insured or the beneficiary than if [those] provisions were set forth in the policy." ORS 742.504. We decline to adopt a construction of ORS 742.504(2)(j)(C) that effectively nullifies the entire point of the statute.

Second, State Farm insists that, by limiting "the insurer's liability for all damages" to the "limit of liability stated in the declarations," ORS 742.504(7)(a) reflects that the legislature "necessarily contemplated" that the insurer's liability under the model coverage could be limited to the highest amount stated in the declarations of any applicable policy. The same obstacle confronts this proposal as well. The legislature did specify that an insurer's payment under the formula set out in ORS 742.504 includes a limitation based on the amount specified in the declarations of the policy. But the legislature also specified that "[e]*very* motor vehicle liability policy" must provide for payment according to that formula. ORS 742.502(1) (emphasis added). Thus, the UM/UIM coverage under every policy must provide for payment of "sums that the insured *** is legally entitled to recover as damages" up to the declared limit of liability. ORS 742.502(5); ORS 742.504(1)(a), (2)(j), (7). The effect of

State Farm's "other coverage" limitation, however, is that only one of the applicable policies provides for payment of "sums that the insured *** is legally entitled to recover as damages" up to the declared limit of liability. Nothing in the definition of "sums" that an insurer must pay contemplates the exception that State Farm has imposed.

There is one provision of ORS 742.504 that addresses how the coverage under a UM/UIM policy is affected when other similar coverage applies to the same loss, but it, too, is an obstacle to State Farm's "other coverage" limitation.[9] Currently, ORS 742.504(9) specifies an order of priority between policies when other coverage "that is similar to this coverage" is available to the insured:

"(9)(a)   With respect to bodily injury to an insured:

"(A)   While occupying a vehicle owned by a named insured under this coverage, the insurance under this coverage is primary.

"(B)   While occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any primary insurance available to the occupant that is similar to this coverage, and this excess insurance coverage shall then apply only to the sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages for bodily injury or death that is caused by accident and that arises out of owning, maintaining or using an uninsured vehicle.

"(b)   With respect to bodily injury to an insured while occupying any motor vehicle used as a public or livery conveyance, the insurance under this coverage shall apply only as excess insurance over any other insurance available to

---

[9] There are other provisions of ORS 742.504 that create exceptions to the requirement of ORS 742.504(1)(a) that the UM/UIM insurer must pay the "sums that the insured *** is legally entitled to recover as damages." For example, insurers may specify, subject to exceptions, that UM/UIM "coverage does not apply" if the insured has settled with any liable party without obtaining the insurer's written consent, if the insured or a relative in the same household owned the uninsured vehicle, or if the insured failed to exhaust the limits of applicable liability insurance. ORS 742.504(4). But State Farm does not contend that any of those coverage exceptions applies to the cases before us or that any model term authorizes a limitation on payments that is analogous to the limitation created by State Farm's "other coverage" limitation.

the insured that is similar to this coverage, and this excess insurance coverage shall then apply only to the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all other insurance."

In other words, except for injuries to an insured "while occupying any motor vehicle used as a public or livery conveyance," one UM/UIM policy is designated "primary," and the other policy must pay to the extent that "the sums that the insured * * * is legally entitled to recover as damages" exceeds the primary payment. ORS 742.504(9).

But State Farm's "other coverage" limitation is not an attempt to model the primary-excess structure specified in ORS 742.504(9). The model term requires each policy that has been designated "excess" to pay any outstanding "sums that the insured * * * is legally entitled to recover as damages," up to the limit of liability specified in the policy, which—as explained above—would mean in this case that each applicable policy would provide payment up to the limit of liability specified in the policy. ORS 742.504(2)(j)(C), (7)(a), (9). State Farm's "other coverage" term, to the contrary, denies any payment of excess damages that remain after State Farm has paid an amount equal to the limit specified in a single policy. Thus, to the extent that the legislature's model term addresses an insurer's obligation when there is other applicable UM/UIM coverage, the approach required by the model term is more favorable to insureds than is State Farm's approach to other applicable coverage. *See Erickson*, 331 Or at 685-86 (concluding that policy terms that denied UM/UIM coverage in the event of applicable "other insurance" were less favorable to the insured than model "other insurance" terms in the version of ORS 742.504(9) then in effect, which would have limited—but not denied—coverage under the circumstances presented).

State Farm does not contend otherwise. Instead, it emphasizes that ORS 742.504(9) currently does not expressly apply to the accident scenarios of the cases before us—because three of the insureds were not occupying any vehicle and the fourth was occupying a rental car with no "primary insurance available." State Farm argues that the omission is the product of an intentional legislative choice to

allow "other coverage" limitations under other accident scenarios. Although we accept State Farm's premise that the terms of ORS 742.504(9) fail to address the "other coverage" scenarios presented in the cases before us, we do not discern from that omission an intent to allow the kind of "other coverage" limitation that State Farm seeks to enforce in the cases before us. We emphasized in *Vega* that "the legislature did not intend to leave insurers free to structure their policies as they pleased *outside* the subject matter represented by the provisions at subsections (1) to (12)." 323 Or at 301 (emphasis in original). Instead, we concluded "that the contrary is true." *Id.* We explained that "the legislature intended to provide insurers with some measure of freedom" with respect to how they structure policy terms *within* "the subject matter represented by the provisions" of ORS 742.504, but that freedom is limited; the "comprehensive model" policy "may be varied only in the sense that terms that disfavor insureds may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added." *Vega*, 323 Or at 301-02.

Moreover, under the comparison framework that we described in *Vega*, a challenged provision in a UM/UIM policy is not tested "by a direct comparison between the challenged provision [and] an individual statutory provision but, instead, by a comparison between *coverage* offered by the policy containing the challenged provision and the *coverage* offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12)." 323 Or at 299 (emphases in original). Even if State Farm's "other coverage" limitation is not expressly inconsistent with a term that the legislature has specified for its model coverage, the term is still unenforceable because it causes State Farm's coverage to be less favorable to its insureds than "the *coverage* offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12)." *See Vega*, 323 Or at 299 (emphasis in original).

State Farm nevertheless points to the legislative history surrounding the legislature's 2015 adoption of the current version of ORS 742.504(9) and attempts to discern a legislative intent to leave insurers free to add the kind of "other coverage" limitation to coverage that State Farm

has added to its policies. State Farm's argument revolves around a statutory amendment that plaintiffs cite as evidence of precisely the opposite legislative intent.

As all parties emphasize, prior to 2015, ORS 742.504(9) had set out a model "other coverage" term that had precisely the same effect on coverage as the term in State Farm's policies. The relevant provisions of ORS 742.504(9) previously had specified that,

> "[w]hile occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any primary insurance available to the occupant that is similar to this coverage, *and this excess insurance shall then apply only in the amount by which the applicable limit of liability of this excess coverage exceeds the sum of the applicable limits of liability of all primary insurance available to the occupant.*"

ORS 742.504(9)(a)(B) (2013), *amended by* Or Laws 2015, ch 5, § 3 (emphasis added). And subsection (9)(b) previously specified that,

> "[i]f an insured is an insured under other primary or excess insurance available to the insured that is similar to this coverage, then *the insured's damages are deemed not to exceed the higher of the applicable limits of liability of this insurance or the additional primary or excess insurance available to the insured.*"

ORS 742.504(9)(b) (2013) (emphasis added). There is no dispute that, had the italicized portions remained in the statute, State Farm's "other coverage" limitation would have been enforceable, because ORS 742.504(9)(b) (2013) provided the same exception for the model coverage. *See Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 216, 179 P3d 633, *modified on recons,* 345 Or 373, 195 P3d 59 (2008) (explaining that the version of ORS 742.504(9)(b) then in effect "require[d] the insurer to determine its liability by comparing its own policy limit to the limits of the other policies in order to set a cap on the insured's damages").

But Senate Bill (SB) 411 (2015) removed those provisions. Understandably, then, plaintiffs point to the 2015 change as an additional indication that the legislature intended to reject that approach to "other coverage" for

policies issued after 2015. State Farm's argument to the contrary assumes that the meaning of the statute can be discerned from comments that were not made and changes that were not adopted as SB 411 moved through committee.

State Farm first emphasizes that the original version of SB 411 proposed to amend ORS 742.504(9)(b) (2013) in a way that—in State Farm's view—clearly would have precluded the kind of "other coverage" limitation that State Farm now seeks to enforce. By the time the bill passed out of committee, however, it had been amended to entirely delete ORS 742.504(9)(b) (2013), rather than to delete only parts of it. State Farm contends that the committee's amendment reflects a "clear and unambiguous" decision that UM/UIM coverage would continue to include the "other coverage" limitation that ORS 742.504(9) (2013) had expressly authorized.

We reject the premise on which that argument rests. As we already have explained, the validity of a challenged provision in a UM/UIM policy must be tested, "not by a direct comparison between the challenged provision" and a statutory provision addressing the same subject, "but, instead, by a comparison between *coverage* offered by the policy containing the challenged provision and the *coverage* offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12)." *Vega*, 323 Or at 299 (emphases in original). And to the extent the insurer adds a term that falls outside of "the subject matter represented by the provisions" of ORS 742.504, the extraneous term is valid only if the term is neutral or favors insureds. *Vega*, 323 Or at 301-02. Thus, the legislature's removal of a model term that previously authorized an exception to coverage can be just as significant as an amendment to expressly prohibit the exception. We presume that the legislature was aware of how ORS 742.504 operates and, as a result, was aware that entirely removing ORS 742.504(9)(b) (2013) from the authorized terms could effect the same change to the model coverage as the initially proposed amendment to ORS 742.504(9)(b) (2013). *See Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a bearing on those statutes."). What matters is that there no longer is any provision in the model policy that

would produce the coverage result that State Farm seeks to achieve with its "other coverage" limitation.

State Farm, nevertheless, insists that the legislature did not intend that the removal of the "other coverage" limitation from the model coverage would have the effect of precluding insurers from enforcing such an exception in their terms of coverage. State Farm bases that conclusion on silence in the legislative history regarding the change to ORS 742.504(9). According to State Farm, "[p]laintiffs are unable to cite to anything contained in the legislative record that indicates that the legislature even contemplated" changing how UM/UIM payments would be calculated when similar coverage is available under more than one policy.

That argument requires some context. The amendments to ORS 742.504(9) (2013) were only one of multiple changes that SB 411 made to half a dozen statutes that govern UM/UIM and other mandated coverage for Oregon motor vehicle insurance policies. Or Laws 2015, ch 5. Among those was a significant change to the meaning of the UIM portion of that coverage, which received a great deal of attention in the legislative testimony. We turn briefly to that change.

Prior to 2015, the wording of ORS 742.502 and ORS 742.504 had left room for debate regarding the role of UIM coverage—coverage for damages caused by a motorist with insufficient liability insurance. *See Vogelin v. American Family Mutual Ins. Co.*, 346 Or 490, 492-93, 213 P3d 1216 (2009) (describing the competing statutory interpretations). The plaintiff in *Vogelin* had argued that UIM coverage essentially served as an additional layer of insurance to cover the insured's unsatisfied damages up to the liability limits stated in the policy. *Id.* at 492. But this court agreed with the defendant that the legislature had intended UIM coverage only to address the gap between the liability limits specified in the insured's own policy and lower limits available from the negligent driver's liability insurance policy. *Id.* at 492, 506 (concluding that, although the insured's unsatisfied damages were well in excess of the $100,000 limits of liability for the insured's UIM coverage, the insurer was obligated to pay only the difference between the coverage

limits and the amount of damages that had been satisfied by the negligent driver's liability insurance). The 2015 Legislative Assembly changed the role of UM/UIM coverage to align with the role proposed by the plaintiff in *Vogelin*, through amendments to ORS 742.502 and ORS 742.504(7) that now make UIM coverage a layer of protection for the insured's unsatisfied damages. Or Laws 2015, ch 5, §§ 2-3. According to State Farm, the committee discussion demonstrates that those changes to the role of UM/UIM coverage were intended, but the lack of discussion regarding the changes to ORS 742.504(9) suggests that the legislature did not intend to change the exception for "other coverage."

Plaintiffs do not dispute that the changes to the role of UIM coverage appear to have been "the primary rule targeted" by the sponsors of SB 411. But plaintiffs reject State Farm's conclusion that the legislature did not intend to change the role of other available coverage when it changed how ORS 742.504(9) treats other available coverage. We reject State Farm's conclusion as well. We cannot disregard the legislature's decision to omit from the "comprehensive model policy" a term that would have authorized State Farm's approach to "other coverage." *See* ORS 174.010 (in construing statutes, court must not "insert what has been omitted"). We have previously cautioned against ignoring the textual changes that the legislature has adopted in favor of statements made in committee proceedings, because "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law." *Gaines*, 346 Or at 171 (citing Or Const, Art IV, § 25). That principle carries even greater weight when we are urged to ignore textual changes on the basis of an inference drawn from silence in the records of committee proceedings. *See Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 226-27, 377 P3d 570 (2016) (cautioning that silence in the legislative history can have a variety of explanations beyond suggesting that the legislature did not intend the effect that the text appears to direct: "for example, a proposed legislative change to the status quo might not prompt comment precisely because everyone understands that the law will have that effect or because supporters do not wish to draw attention to it");

*see also State v. McNally*, 361 Or 314, 332-33, 392 P3d 721 (2017) ("[T]he fact that the legislature had a specific concern in mind in enacting legislation does not mean that the legislature necessarily intended the legislation to address only that concern[.]"). We are persuaded that the model coverage set out in ORS 742.504 no longer allows an exception when other similar coverage also applies to the loss. As a result, State Farm's coverage is less favorable than that set out in ORS 742.504. Under the rule that we articulated in *Vega*, that conclusion should end the inquiry and render State Farm's "other coverage" provision unenforceable.

State Farm, however, proposes a final argument that looks beyond the model coverage of ORS 742.504 to another statute, ORS 742.506, which addresses the "allocation of responsibility between insurers" in cases of multiple, potentially applicable policies. Under the terms of that statute, "if all policies potentially involved expressly allocate responsibility between insurers, or self-insurers, without repugnancy, then the terms of the policies shall control," but otherwise "the provisions of ORS 742.504(9) shall control allocation of responsibility between insurers."[10] According to State Farm, the "other coverage" term in its policies "allocate[s] responsibility between insurers," does so "without repugnancy" among the policies (because each contains the identical term), and, therefore "shall control." Both the initial premise and the conclusion of that argument are flawed.

State Farm's initial premise is flawed because it requires us to assign a meaning to "allocate responsibility" that is contrary to the standard usage of those terms. As used elsewhere in the Oregon insurance code, the term "responsibility" refers to accountability for damages. ORS 801.280 (describing Oregon's "[f]inancial responsibility requirements" as meaning "the ability to respond in damages for liability, on account of accidents arising out of the ownership, operation, maintenance or use of a motor vehicle" up to the minimum amounts required by ORS 806.060);

---

[10] ORS 742.506 is not expressly limited to the allocation of responsibility between multiple policies of UM/UIM coverage, but that limitation is suggested by the fact it incorporates "the provisions of ORS 742.504(9)," which address priority among multiple policies that provide applicable UM/UIM coverage.

*see also Black's Law Dictionary* 1569 (11th ed 2019) (defining "responsibility" as "[t]he quality, state, or condition of being duty-bound, answerable, or accountable; LIABILITY"). And an "allocation" refers to "[t]he amount or share of something that has been set aside or designated for a particular purpose" or "[a] designation or apportionment for a specific purpose." *Black's* at 94. Thus, ORS 742.506 would appear to refer to the method of determining which portion of an insured's damages each insurer will pay. For example, if an insured's total outstanding losses were $150,000, and two applicable policies each provided coverage with limits of $100,000, an allocation of responsibility would determine what portion of the $150,000 each insurer must pay. *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 126 n 8, 241 P3d 710 (2010), *adh'd to as modified on recons*, 349 Or 657, 249 P3d 111 (2011) (explaining that trial court had "allocated responsibility" for future cost to insured of remediating contaminated soil by assigning one insurer 90 percent of the total insured potential loss and the other the remaining 10 percent).

That meaning is further suggested by the fact that ORS 752.506 makes the default method for "allocation of responsibility between insurers" the method that is specified in ORS 742.504(9)—a method that designates one policy as "primary" and one as "excess" when multiple policies insure against the loss. Using the example above, the allocation of responsibility under ORS 742.504(9) would be $100,000 to the primary policy and the remaining $50,000 to the "excess" policy. Under ORS 742.506, however, if the two applicable policies both specify that liability will be apportioned differently—say 50 percent - 50 percent—then that agreement would be enforceable, and each policy would pay $75,000. But State Farm's "other coverage" term does not purport to specify which policy will pay which portion of the insured's loss; instead, it specifies a maximum sum that all policies combined will pay, no matter how large the loss. We are unwilling to assign that strained construction to the terms of ORS 742.506, particularly when doing so leads to an equally flawed conclusion.

State's Farm's conclusion that ORS 742.506 allows its "other coverage" limitation to control what it must pay to

its insured is flawed because it contradicts the primary command of ORS 742.504, that the UM/UIM coverage in every policy must be "no less favorable in any respect to the insured or the beneficiary than" coverage under the terms specified in that statute. To accept State Farm's conclusion that its added "other coverage" term controls what it must pay would require us to accept that a term that causes an insurer's UM/UIM coverage to be less favorable to the insured than the coverage under ORS 742.504 is, nevertheless, enforceable under ORS 742.506. In other words, to accept State Farm's conclusion that ORS 742.506 authorizes a coverage limitation beyond those authorized by ORS 742.504 we also would have to accept a conclusion that the "comprehensive model" coverage in ORS 742.504 is not actually comprehensive. We cannot accept that conclusion. Accordingly, State Farm's "other coverage" limitation is unenforceable.

The certified question is answered.